GUNTER & MUNSON v. MEADE & BOMAR.

No. 3177.

1. **Duplicate Land Certificate.**—The Commissioner of the General Land Office has no lawful power to issue a duplicate land certificate when no original had ever issued or when the original had been satisfied.

2. **Location Upon Titled, etc., Lands Forbidden — Titled Land.**—The Constitution forbids the location, survey, or patent of any land by virtue of a genuine land certificate if the land was titled or equitably owned under color of title from the sovereignty of the State, and the prior appropriation be evidenced in the manner stated in the Constitution, article 14, section 2. Where land was filed upon and field notes returned to the Land Office by virtue of a duplicate land certificate where no original had ever existed, such land was evidently not *titled land* as against a subsequent claimant locating upon it before the patent had issued.

3. **Land Equitably Owned.**—Land can not be said to be "equitably owned under color of title from the sovereignty of the State" unless a state of facts exists which as against the State would make such ownership equitable.

4. **Fact Case.**—Where no original certificate had ever existed a duplicate was issued by the Commissioner of the General Land Office. Under this duplicate land was located and survey made and field notes returned. When in this condition others located other land certificates upon the land. A patent, however, issued upon the elder claim, and subsequent to the issuance of the patent the land was sold and came into the hands of parties ignorant of the defect. *Held,* in favor of the second location, that there was no

equitable ownership of the land shown under the first location so as to prevent the second location and surveys.

5.   **Duplicate Where no Original Land Certificate.**—The duplicate of a land certificate entitles the owner "to the same quantity of land as was conferred by the original." If there was no original it confers no right whatever.

6.   **Continuous Adverse Possession—Breaks.**—The fact that the fences (of a pasture) may for a time not have been so kept up as to exclude others from the land, whether from inattention or accident, would not necessarily interrupt the running of the statute of limitations if there was still "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of all others." See facts.

7.   **Limitation as to School Alternate Sections.**—Title by limitation can not be acquired against the State by the adverse possession of land surveyed by an alternate certificate for the State.

APPEAL from Tarrant.   Tried below before Hon. R. E. Beckham.
The opinion gives a statement.

*H. G. Robertson*, for appellants.— 1.   The evidence having shown that there never was an original certificate issued to Donato Leona such as that described in the duplicate upon which the patent to M. M. Purinton issued for the league and labor of land, the court erred in failing to find as a matter of law that such duplicate certificate and all subsequent proceedings thereon, including the issue of said patent, were absolutely null and void.   Rev. Stats., art. 3963, 3907; White v. Martin, 66 Texas, 340; 50 Texas, 595; Parker v. Bains, 59 Texas, 17, and authorities cited; Whitehead v. Foley, 28 Texas, 268; Warren v. Shuman, 5 Texas, 441.

2.   The proceedings to establish a duplicate certificate being ex parte and before a tribunal with special and limited powers, the law must be strictly followed, and the failure to publish the necessary notice of the loss of the original in manner and form prescribed by law rendered such proceedings null and void, and the duplicate certificate issued thereon null and void.   Rev. Stats., art. 3883, 3884, 3885; Brown v. Wheelock, 75 Texas, 385; Chinn v. Taylor, 64 Texas, 385.

*Hunter, Stewart & Dunklin*, for appellees.— 1.   The Commissioner of the General Land Office of Texas being an agent of the government, empowered by law with authority and jurisdiction to inquire into and ascertain the existence of all the facts necessary to the issuance of the duplicate certificate and patent issued thereon to the land in controversy, and having issued said duplicate certificate and patent, acting within the scope of his jurisdiction and authority, said certificate nor the patent issued thereon would be absolutely void, but voidable only, notwithstanding the nonexistence of facts supposed to exist prior to the issuance of said certificate and patent.   Decourt v. Sproul, 66 Texas, 368; Bowmer v. Hicks, 22 Texas, 155; Johnson v. Smith, 21 Texas, 722; Gullett v. O'Connor, 54 Texas, 416.

2.   The patent being voidable only, and appellees, as well as those under whom they claim, having bought and paid a valuable consideration for said land without notice of the alleged fraud perpetrated in the procurement of the duplicate certificate, are innocent purchasers and are entitled to protection as such.

3.   The court erred in finding against appellees on the defense of three years statute of limitation.  Cantagrel v. Von Lupin, 58 Texas, 570; Cochrane v. Farris, 18 Texas, 855; Elliott v. Mitchell, 47 Texas, 451; Whitehead v. Foley, 28 Texas, 15.

STAYTON, Chief Justice.—This suit was brought by appellees to remove cloud from and to quiet title to land in controversy, basing their right on a patent, as well as adverse possession for three years.

The land was patented to M. M. Purinton as assignee of Donato Leona on August 13, 1884, and the plaintiffs deraign title regularly from the patentee.  It was located and surveyed as early as December 21, 1874, and the field notes returned to the General Land Office within the time prescribed by law, and was granted by virtue of what appeared to be a duplicate certificate issued by the Commissioner of the General Land Office on December 4, 1874, to Donato Leona in lieu of certificate No. 516, which was supposed to have been issued by the Board of Land Commissioners for Nacogdoches County to Donato Leona for one league and labor of land on March 27, 1838.

In fact no such original certificate had ever issued, and the court below found that the records of the General Land Office did not show that any such original had ever been issued by the Board of Land Commissioners for Nacogdoches County, but that a colonial grant for one league of land was made to Donato Leona by the government in 1835, which was situated in Angelina County; but that that board did issue to the assignees of Leona a certificate for one labor of land.

Donato Leona died about the year 1840, and prior to the date of a paper which purported to be a transfer of his headright certificate for one league and labor of land (No. 516) to one S. H. Cooper, that paper bearing date January 3, 1847.  That paper was manifestly a forgery, and the patent to Purinton was issued to her directly as assignee by virtue of a conveyance to her by Cooper of what purported to be the duplicate certificate.  That conveyance bore date October 24, 1883, and purported to convey the duplicate on which the patent issued as well as the land located by virtue of it.

The duplicate was as follows:

"General Land Office,

"Austin, Texas, December 4, 1874.

" This is to certify, that satisfactory evidence having been produced of the loss of headright certificate No. 516, class first, issued by the Board

of Land Commissioners for Nacogdoches County to Donato Leona for one league and one labor, on the 27th of March, 1836, this duplicate will therefore entitle said Donato Leona to all the benefits granted in said original headright certificate.

"In testimony whereof, I hereunto set my hand and fix the impress of the seal of said office the day first above written.

[Signed] "J. J. GROSS,

"Commissioner."

The number of the certificate issued to assignees of Leona or to himself for one labor of land was 510, while first class headright certificate issued by the Board of Land Commissioners for Nacogdoches County numbered 516 was issued to Maria Gertrudes Casinova.

The land in controversy is claimed by Gunter & Munson through the location and survey of a valid alternate land certificate for 640 acres owned by them. Their locations of both sections under that certificate were surveyed March 16, 1878, and duly returned to the General Land Office.

The court below found that the patent to Purinton was not void, and that plaintiffs and those under whom they claim "having in good faith purchased the land and certificate by virtue of which it was patented for a valuable consideration, without notice of the fraud practiced upon the Commissioner, are innocent purchasers, unaffected by such fraud, and entitled to recover herein."

The court further held that plaintiffs did not establish such continuous possession as would sustain their claim under the three years period of limitation.

From this statement it will be seen that the location by Gunter & Munson was before the issuance of the patent to Purinton.

If the location and survey under which Gunter & Munson claim was not forbidden by law theirs is the superior right, for the basis of their claim is a valid land certificate, while the basis of the claim under which Meade & Bomar claim is a paper having the form of a valid duplicate certificate but without any validity whatever, for the Commissioner of the General Land Office was without any lawful power whatever to issue a duplicate certificate when no original had ever issued or when the original had been satisfied with land.

The Constitution forbids the location, survey, or patent of any land by virtue of a genuine land certificate if the land was titled or equitably owned under color of title from the sovereignty of the State and the prior appropriation be evidenced in manners stated. Const., art. 14, sec. 2.

It is evident that the land was not "titled" within the meaning of the Constitution when Gunter & Munson caused it to be located and surveyed. Winsor v. O'Connor, 69 Texas, 571, and cases cited; Adams v. Railway, 70 Texas, 252.

The court below, however, seems to have held that the land was equitably owned by Mrs. Purinton or those claiming through her.

Land can not be said to be "equitably owned under color of title from the sovereignty of the State" unless a state of facts exists which as against the State would make the ownership equitable. One may claim land in the utmost good faith and know of no fact at the time his claim accrued which renders the claim invalid, but if it be in fact invalid and no facts exist which as between him and the State make it intrinsically just and fair that he should have the land, then within the meaning of the Constitution such a person can not be said to be an equitable owner under color of title from the sovereignty of the State.

The Commissioner of the General Land Office is a ministerial officer, empowered to issue duplicate certificates for land when the original has been lost or destroyed, and it may be that his finding whether the certificate had been lost or destroyed and whether the preliminary steps had been taken to authorize him to act could be questioned by one who claimed that he had no power to issue the duplicate because the original was neither lost nor destroyed when the duplicate issued. The power, however, to issue a duplicate certificate rests upon the fact that an original certificate once existed, and if no such certificate ever existed the act of the Commissioner in issuing what appears to be a duplicate can confer no right by estoppel or otherwise.

A duplicate in terms professes to confer no rights other than such as the original gave. It entitles the owner of the duplicate "to the same quantity of land as was conferred by the original." Rev. Stats., art. 3885. If there was no original, it confers no right whatever.

It must be held that appellees show no such equitable ownership of the land as made it unlawful for appellants to locate upon it and have the surveys made which the certificate they owned authorized; and their claim being under a valid certificate for land, is superior to any appellees could assert through a patent issued under a certificate which gave no claim against the State, either legal or equitable, for any land whatever.

The court below held that appellees did not show such continuous possession of the land as entitled them to recover under their claim of limitation through three years adverse possession. If it be conceded that the evidence of right offered by appellees was such as would sustain the statutory bar under three years possession, still it was incumbent on them to show such possession as the statute makes necessary.

The land seems to have been used only for pasture purposes, and with other lands at one time to have been enclosed with a wire fence, but all improvements except fencing were on the other lands.

The evidence is conflicting as to whether the enclosure was so kept up as to give a continuous possession for the period necessary to complete the statutory bar. Evidence for the appellees tends to show that while

the fence was at times permitted to be down, there was such evidence of continuous adverse claim and holding against all persons as would be sufficient to continue the running of the statute for three years after the patent issued.

The evidence offered by appellants tended to show that the place was for a time abandoned, the fences for a long period permitted to go down, and the land to become open and to be used as a pasture by whomsoever desired to use it, without regard to the consent or wish of appellees, as were other lands in no manner enclosed.

The fact that the fences may for a time not have been so kept up as to exclude others from the land, whether this resulted from inattention or accident, would not necessarily interrupt the running of the statute if there was still "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of all others."

The evidence offered by appellants tended to show that for a part of the time necessary to complete the bar there was not such a possession as would keep the statute in operation. The credibility of the witnesses and the weight to be given to their testimony was for the determination of the judge who tried the cause, and as there was evidence to support his finding on limitation we are not authorized to set it aside.

Limitation in no event would run as to the alternate section that belongs to the State as a part of the school fund until title thereto passes from the State, of which there is no evidence in the record before us.

Appellees do not show such facts as entitle them to the equitable relief sought; and the judgment of the court below will be reversed and judgment here entered that they take nothing by their suit.

*Reversed and rendered.*

Delivered October 21, 1890.

Motion for rehearing refused.