AMBROSE JACKSON ET AL. v. NONA MILLS COMPANY ET AL.

Decided May 13, 1910.

**1.—Practice—Ancient Instrument—Evidence.**

When, the jury having been retired, the court hears evidence upon objections to the admissibility in evidence of certain documents as ancient instruments and rules that they are not admissible, assignments of error based upon such ruling can not be considered on appeal when it does not appear that the ruling was excepted to at the time, nor that objection was interposed to any of the evidence offered on said issue until after the hearing was concluded.

**2.—Evidence—Ancient Instrument—Proper Custody—Land Office.**

Where it appeared from the evidence that a certain bounty warrant certificate issued in 1837 was filed in the Land Office with the field notes of the first survey thereunder in 1856; was withdrawn in 1857; was again filed in 1860; was in some way again withdrawn; that a survey was made under it for an assignee thereof in 1874 and again filed in the Land Office in December, 1874, with the field notes of the survey, and that it had remained in the Land Office ever since, it can not be said, when a Land Office copy of said certificate is offered in evidence as an ancient instrument, that the Land Office is not at least a place where one would naturally expect to find the original certificate, or that it is not such custody as affords a reasonable presumption of the genuineness of the certificate.

**3.—Land Certificate—Duplicate—Subrogation.**

The action of the Land Commissioner in issuing a duplicate certificate upon a false affidavit as to loss of the original would not destroy the original, and the owners of the original certificate would have the right to accept the location of the duplicate, and in equity would be entitled to recover the land.

**4.—Evidence—Ancient Instrument—Ground of Suspicion—Province of Judge and Jury.**

The ground of suspicion from which instruments must be freed before they are admissible in evidence as ancient instruments, refers to something apparent upon their face or shown by some fact directly connected with them, and not to extraneous testimony, which is for the jury in passing upon their genuineness after they are admitted.

**5.—Same.**

When a reasonable probability is established that a paper is what it purports to be, the question of genuineness then becomes one for the jury, and the paper ought to go before them with the evidence impeaching its genuineness, with proper instructions from the court.

**6.—Same.**

The issue being as to the admissibility in evidence of certain transfers, endorsed on a land certificate, as ancient documents, evidence considered and held insufficient to justify the trial court in excluding said documents from the jury, but proper for the jury to consider in passing upon the genuineness of the documents.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Jno. L. Little,* for appellants.—The original bounty warrant and all endorsements thereon are proper archives of the General Land Office; or more than thirty years old and certified copies, are admissible in evidence as links in plaintiff's chain of title. Hanrick v. Cavanaugh, 60 Texas, 23; Parker v. Spencer, 61 Texas, 163; Holmes v. Anderson, 59 Texas, 481.

The Commissioner of the General Land Office has no power to issue a duplicate certificate unless the original is lost or destroyed. Sayles Rev. Stats., 1897, art. 4119; Gunter v. Meade, 78 Texas, 638.

A certified copy of a certificate, together with all endorsements and transfers thereon, on file in the General Land Office is admissible in evidence. Sayles Rev. Stats., arts. 2308-2315-4053; Parker v. Spencer, 61 Texas, 155; Holmes v. Anderson, 59 Texas, 481.

The owner of a land certificate may assert title to land secured under a duplicate obtained and located by one in fraud of such owner,

and his want of knowledge or consent does not prevent his assertion of ownership. The fraudulent location may be ratified. Seibert v. Richardson, 86 Texas, 295; Beatty v. Masterson, 77 Texas, 171.

The act of the Land Commissioner in issuing the duplicate certificate is, not conclusive against the assignee and all subsequent purchasers of the original grantee. Palmer v. Curtner, 55 Texas, 64; Walker v. Cardine, 78 Texas, 493; Byers v. Wallace, 25 S. W., 1046; Slayton v. Singleton, 72 Texas, 209.

*Greer & Minor, W. G. Taliaferro* and *Sleeper, Boynton & Kendall,* for appellees.—Whether a document comes from the proper custody is a question for the court and not for the jury. 17 Cyc. Ev., 452.

The Commissioner of the General Land Office has power to determine whether or not an original land certificate has been lost. Seibert v. Richardson, 5 Texas Civ. App., 504.

In order for an ancient instrument to be admissible in evidence without proof of its execution, such instrument must be free from just grounds of suspicion; and the evidence in respect to original bounty warrant No. 907 issued to Corbett Stevens with the transfers endorsed thereon, shows that same is not free from just grounds of suspicion, for it appears therefrom that said bounty warrant was withdrawn from the Land Office in 1857, and was claimed by one J. K. Williams, who exercised acts of ownership thereof by applying to have land located thereunder in Panola County, in 1872, and in Harrison County in 1874, and who filed said bounty warrant No. 907 with the Harrison County field notes in the Land Office on December 31, 1874; and it appears from an affidavit made by one, Ambrose Jackson, plaintiff herein, and filed in this cause, that a deed purporting to have been executed by Thomas Hughes to said J. K. Williams, purporting to convey said land warrant No. 907, is a forgery, said Thomas Hughes being named as one of the transferees of said bounty warrant as shown by endorsements found on the copy from the Land Office offered in evidence by plaintiffs. Rev. Stats., 1895, arts. 4119, 4120, 4121, 4142; 1 Greenleaf on Ev., 510; Stroud v. Springfield, 28 Texas, 649; Chamberlain v. Showalter, 5 Texas Civ. App., 226; Morgan v. Tutt, 52 Texas Civ. App., 301.

REESE, ASSOCIATE JUSTICE.—This is an action in trespass to try title and for damages, by Ambrose Jackson and others against the Nona Mills Company and Wm. Cameron & Co., Incorporated. The property involved is 320 acres of land located and patented under duplicate certificate No. 29/219 issued in lieu of original bounty warrant No. 907, which was issued to Corbett Stevens. A trial with the assistance of a jury resulted in a verdict for defendants under a peremptory instruction from the court, and from the judgment plaintiffs prosecute this appeal.

The plaintiffs claim title as heirs of Thomas Hughes, who died in 1851. Their claim of title rests upon the following facts, as claimed by them: Original bounty warrant No. 907 for 320 acres of land was issued December 11, 1837, to Corbett Stevens by Barnard E. Bee, Secretary of War. On the back of the original certificate on file in the General

Land Office appear, first, a transfer of the certificate by Stevens to Will Daniel; second, a transfer by Will Daniel to William H. Sewell, dated 9th August, 1838; and third, transfer by Sewell to Thomas Hughes, dated August 25, 1838. To the latter transfer there appears a certificate of proof of execution before G. W. O'Bryan, clerk, County Court of Jefferson County, by one of the subscribing witnesses, purporting to have been made December 14, 1858. Each of the transfers was signed also by two witnesses.

The land sued for has been patented under a location made thereon, by virtue of duplicate certificate No. 29/219 issued regularly to one J. N. Dark in 1874, in lieu of the original certificate No. 907, alleged to have been lost, and which was claimed by Dark, in the proceedings to obtain the duplicate, to belong to him.

Appellants claim title under ownership by Hughes, their ancestor, of the original certificate, and appellees claim title under the patent issued upon the duplicate certificate.

Upon the trial appellants offered in evidence a certified copy from the General Land Office of the original certificate with endorsements thereon. To the introduction of this document appellees interposed the following objections:

"First. That these transfers are not proven up, the execution of them are not proven up.

"Second. If these transfers and each of them are offered in evidence as ancient instruments, they are not properly admissible in evidence as ancient instruments because they do not come from the proper custody, and the document itself, on which these documents are endorsed is not free from suspicion."

The jury having been retired, evidence was introduced by appellees, consisting largely of the deposition of the Land Commissioner and exhibits attached, with regard to facts appearing of record in the General Land Office concerning the document, and also concerning the issuance of the duplicate and the patent issued thereon, the purpose of such testimony being to sustain the objections aforesaid to the admission of the documents in evidence. After hearing this evidence the court sustained the objections. The jury having been brought in, the court thereupon instructed them to return a verdict for defendants.

Several of the assignments of error complain of the admission of certain of the evidence brought out as herein stated, and the refusal to strike out the same. These assignments can not be considered. In the first place, it does not appear from the transcript nor the statement of facts, that the rulings of the court complained of were excepted to. Secondly, it appears from the record that no objection was interposed to any of this evidence until after the hearing of this matter was concluded, and the court had announced its conclusion that the objection of appellees to the introduction of the documents offered by appellants should be sustained. The evidence was offered for this purpose alone. The objections of appellants came too late.

The excluding of appellants' evidence of title left nothing for the jury to consider, and there was no error in instructing a verdict for appellees. The only error to be considered is that presented by the tenth, twelfth and thirteenth assignments of error, which complain of

the action of the court in sustaining appellees' objection to the intro-
duction of the certified copy of the original certificate, and the endorse-
ments thereon. This requires a statement of the evidence introduced
by appellees in support of these objections.

None of the evidence tends to throw suspicion on the certificate
itself. It was shown that it was filed in the General Land Office about
1856, together with field notes of a survey of two tracts of land in
Liberty County, of 220 and 100 acres respectively, made July 23, 1856.
This location was on titled land. In 1857 it was withdrawn by A. N.
B. Tompkins because something was wanting to complete the chain
of transfers. This indicates that there had been, at that date, more
than one transfer of the certificate. A pencil endorsement on the cer-
tificate showed that it had been again filed in the General Land Office
February 9, 1860, by Hon. E. S. Pitts for Thomas Hughes. As shown
by the files in the General Land Office the original certificate was again
located by survey made July 10, 1874, for Thomas *Huughs,* assignee
of *C. Stephens* on 320 acres of land in Harrison County, and field
notes returned to the General Land Office with the original certificate,
December 31, 1874. This survey also appears to have been made on
titled land. The fact that the name of the applicant for the survey
is spelled "Huughs" and of the grantee of the certificate, "Stephens," is
of no significance. It appears that on more than one occasion this
mistake had been made as to the spelling of the name of Stevens. It
is also stated that the number of the certificate is 707, instead of 907,
but the officials of the General Land Office correctly treated this as a
mere clerical error and intended for 907, as other recitals identified
the certificate. On these field notes is the endorsement "Thos. Hughes
Ass' of C. Stephens, 320 acres of land in Harrison County, J. K. File
136, 2 Harrison Bounty, field notes of 320 acres, C. Stephens, Filed
Dec. 31/74, Rhoads Fisher, Chf. Clk." with other memoranda not im-
portant. Also, "Within warrant duplicated and duplicate patented,"
and in pencil, "The warrant was advertised by J. N. Dark as lost who
makes affidavit of ownership but files no transfer;" and also in pencil,
"J. K. Williams App., wants statement." On the original certificate
also appears in lead pencil the name, "J. B. (or K) Williams," and
in this connection it was shown that on December 12, 1872, J. K.
Williams, who styles himself "Locator" pointed out to the county sur-
veyor of Panola County 320 acres of land for location and survey,
under bounty warrant 907 issued by Bernard E. Bee, Secretary of War,
to *Calbert Stewart,* dated December 11, 1837. From the date and
number of the certificate named, there is no doubt that it referred to
the certificate issued to Corbett Stevens. It does not appear that this
survey was ever made, nor is it shown by the application that Williams
then claimed to be the owner of the certificate, but it was shown that
there had been recorded in Hardin County on June 18, 1883, what
purports to be a transfer by Thomas Hughes to J. K. Williams of
this bounty warrant, dated January 21, 1874, and that appellant, Am-
brose Jackson, had made affidavit that this instrument was a forgery.
As it was admitted that Hughes died in 1851, it follows that this in-
strument was, as charged, a forgery, and explains the name of J. K.

Vol. LXI Civil—10.

Williams on the Land Office records, in connection with the original certificate. It was further shown that in 1871 J. N. Dark, who makes affidavit that he is the owner of bounty warrant No. 907, describing this warrant, and that it is lost, duly advertised the loss as required by law in a newspaper for sixty days, and made application for the issuance of a duplicate. Upon this application, duplicate certificate No. 29/219 was issued in name of the original grantee, Stevens, and forwarded to Dark. By virtue of this certificate the land in controversy was located and surveyed, and upon the location patent issued May 1, 1874.

From this evidence, it appears that the certificate was filed in the General Land Office with the first survey about 1856, was withdrawn in 1857; was again filed by Pitts for Thomas Hughes in 1860; in some way was withdrawn; survey made under it for Thomas Hughes in 1874, and again filed in the General Land Office December 31, 1874, with the field notes of this survey, where it has remained ever since. It seems clear to us that the General Land Office, if not the only proper place for this certificate, is, at least the place where one would naturally expect to find it, or such custody as affords a reasonable presumption of its genuineness. It is now, and has been, in the original file 136. There is no merit in the objection that the document does not come from the proper custody. (1 Greenleaf, sec. 21; 3 Wigmore, sec. 2139; Keck v. Woodward, 53 Texas Civ. App., 267, (116 S. W., 79); Williams v. Conger, 49 Texas, 582).

We can not agree with appellees' contention that, after the duplicate was issued the original was mere waste paper, that it had performed its office and had no business in the General Land Office. The evidence detailed does not cast any suspicion upon the certificate itself. The action of the Land Commissioner in issuing the duplicate, upon the proof of the loss of the original, did not destroy the original. If in fact it was not lost, and if the appellants can establish their ownership of it, they would have the right to accept the location of the duplicate and in equity would be entitled to recover the land. Gunter v. Meade, 78 Texas, 638; Seibert v. Richardson, 86 Texas, 295; Beatty v. Masterson, 77 Texas, 171; Morgan v. Butler, 23 Texas Civ. App., 470, (36 S. W., 690).

As to the second ground of objection, that the instrument, so far as concerns the transfers endorsed thereon, which is the main, if not the only issue, is not free from suspicion and on this ground not admissible as an ancient instrument, we think the learned trial judge misconceived the scope of the requirements of the law on this point, and gave undue consideration to evidence of facts, which, while proper for consideration in determining the genuineness of these transfers by the jury, should not have been considered in determining the question of the admissibility of the instrument as an ancient instrument. "The ground of suspicion, from which such instruments must be freed before they are admissible in evidence, refers to something apparent upon their face, or shown by some fact directly connected with them, and not to extraneous testimony, which is for the jury in passing upon their genuineness after they are admitted." (Williams v. Conger, 49 Texas, 596; Beaumont Pasture Co. v. Preston, 65 Texas, 451).

It has been held, and we think the rule a sound one, that "if there is a reasonable probability established that the paper is what it purports to be, the question then becomes one for the jury, and the paper ought to go before them with the evidence impeaching its genuineness, with proper instructions." (Gibson v. Poor, 21 N. H. 446; Lawrence v. Tennant, 15 Atl. 543; 1 Ency. of Evidence, 884).

The paper itself, in the present case, was not produced for the inspection of the court, and could not be, hence neither party could rely upon such evidence of genuineness, or the contrary, as would have been thus afforded. But judging from what is shown by the evidence, there is nothing upon the face of the paper itself (we refer to the transfers endorsed on the certificates) which tends to cast suspicion upon these transfers, or to indicate that they are not what they purport to be. It is only when we come to the extraneous facts, not appearing from the face of the instrument nor directly connected therewith, such as the issuance of the duplicate certificate, under the claim by Dark that the original was lost, which is shown not to have been the fact, and his ownership thereof; the extremely shadowy connection of Williams therewith, and other facts more or less remote, that any suspicion appears to be justified as to the genuineness of the transfers. These facts are all proper to be considered by the jury in determining their genuineness, but are not ground for objection to the admission of the instrument. It is a fact of some significance, which appellees in their brief overlook, that it is shown that as early as 1860 the certificate was filed in the General Land Office by Pitts for Thomas Hughes, who must at that date have claimed title to it under the transfer endorsed on the certificate. There was again assertion of ownership in his name in 1874, when the survey was made for him as assignee, and there must have been some evidence of his ownership of the certificate, or Williams would not likely have forged and had recorded, the transfer to himself by Hughes in 1874, if that matter were proper for consideration in passing upon the admissibility of the transfers endorsed on the certificate at all. As we have stated, we do not think it was. It does not matter that this evidence was introduced without objection from appellants. The hearing was before the court, and the question is, could such evidence of extraneous matters have been properly considered in determining the admissibility of the instrument as an ancient instrument? We are aware that much must be left to the trial court in passing upon this question, and especially so where the admissibility of the instrument is to be determined from an inspection of the original, which was not had in this case. But giving full force to that fact, we are of the opinion that it was error to exclude the instrument, under the facts presented. As we have said, all of the evidence is pertinent upon the issue of the genuineness of these transfers, when that issue comes to be passed upon.

For the error indicated, the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*