JAMES H. BURNHAM ET AL. V. HARDY OIL COMPANY ET AL.

No. 2453.    Decided June 22, 1917.

1.—Limitation—Possession Under Color of Title—Community Property.

The husband's deed, made after the wife's death, and conveying real estate, their community property, held under deed to him, does not, though connected with a chain of valid conveyance from the sovereignty of the soil, constitute such color of title as will support limitation by three years' possession as against the claim of the heirs of the wife to her half interest. (Pp. 560-568.)

#### 2.—Same.

The title which will support limitation by three years possession means, necessarily, something less than the paramount right to the land, which needs no limitation to support it, and something more than the right conferred by a naked deed. It means as defined by the statute, that the claimant, by a regular chain of transfer of itself effectual for that purpose, must possess the purported title originally conveyed by the sovereign's grant, the source of claimant's right. It must originate in a power in the sovereign to convey it (Smith v. Power, 23 Texas, 33; League v. Rogan, 59 Texas, 427) and there must continue, in those whose successive transfers constitute the chain of title, the power to convey it, which is lacking in one who has previously sold and conveyed it. (Wright v. Daily, 26 Texas, 730; Harris v. Hardeman, 27 Texas, 249; Long v. Brenneman, 59 Texas, 210; League v. Rogan, 59 Texas, 427.)     (Pp. 561-563.)

#### 3.—Same.

A conveyance of community property by the husband after the wife's death, not made for the payment of community debts, is insufficient to convey the title because of his lack of power to convey and can not constitute a link in the chain of title from the sovereign which will support limitation by three years possession. And this power to convey is not supplied by the principle which protects, as an innocent purchaser, one buying from the husband without knowledge of the equitable rights of the deceased wife. A limitation claimant derives no right from this principle.     (Pp. 563-565.)

#### 4.—Same—Cases Discussed, Approved, Distinguished, and Harmonized.

Veramendi v. Hutchins, 48 Texas, 531; Patty v. Middleton, 82 Texas, 586; Cole v. Grigsby, 89 Texas, 223; League v. Rogan, 59 Texas, 427, approved and followed. Grigsby v. May, 84 Texas, 240; Baldwin v. Root 90 Texas, 546, distinguished, and the Texas decisions on the subject harmonized.     (Pp. 561-568.)

#### 5.—Limitation—Five Years Statute—Registered Deed.

Limitation under the five years statute in favor of the beneficiary of a deed may rest on his possession under a registered deed to another shown by the undisputed proof to hold same as trustee for his benefit; and the court may assume the fact where such proof is undisputed.     (Pp. 568, 569.)

#### 6.—Limitation—Adverse Possession—Five Years Statute.

Possession, etc., of land under a registered deed may be constituted by the enclosure and use as pasture of a large tract, though within the enclosure were lands controlled by other persons using it jointly.     (P. 569.)

#### 7.—Same—Fences.

Temporary breaks in the inclosure of land will not arrest limitation. Evidence as to inclosure and use here considered is held to present no question as to the sufficiency of possession, use, etc., under a registered deed to support limitation; and justify a peremptory instruction on the ground that such defense was established.     (Pp. 569, 570.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Matagorda County. Burnham and others sued the Hardy Oil Company and others for the recovery of land. Defendants had verdict and judgment under peremptory instructions. Plaintiffs appealed; and the judgment, affirmed as to the others, was reversed and remanded as to two appellants, Legge and Farjeon. All the defendants applied for and obtained writ of error.

*Baldwin & Baldwin, L. C. Christian, Lane, Conger & Austin,* and

*Devlin & Devlin,* for plaintiffs in error.—The Court of Civil Appeals was right in holding that appellees were not innocent purchasers for value without notice and could not prescribe under the three-year statute of limitation. Hill v. Moore, 85 Texas, 338; Caruth v. Grigsby, 57 Texas, 259; Grigsby v. May, 84 Texas, 240; Cole v. Grigsby, 89 Texas, 223; Veramendi v. Hutchins, 48 Texas, 531; Thompson v. Cragg, 24 Texas, 582; Wiess v. Goodhue, 98 Texas, 280; Randolph v. Junker, 1 Texas Civ. App., 517, 21 S. W., 552; Hall v. Gwynne, 4 Texas Civ. App., 109, 23 S. W., 290.

Under the authorities the defendants in error failed to establish title by five years' limitation. Fuentes v. McDonald, 85 Texas, 136; Richards v. Smith, 67 Texas, 612; Dunn v. Taylor, 102 Texas, 80; Vineyard v. Brundrett, 17 Texas Civ. App., 147; Whitney v. United States, 167 U. S., 529; Bergere v. United States, 168 U. S., 66.

Limitations would not run against the plaintiffs in this case for the reason that they and their ancestors through whom they deraign title were co-tenants or tenants in common with Henry Parker and Wm. E. Parker, and the undisputed evidence shows that the plaintiffs resided in the State of California and did not know that their co-tenants had ever conveyed the property or that the defendants were in actual and adverse possession of the property. Stubblefield v. Hanson, 94 S. W., 406; Fuentes v. McDonald, 85 Texas, 132; Alexander v. Kennedy, 19 Texas, 488; Roberts v. Morgan, 30 Vt., 319; Portis v. Hill, 3 Texas, 279; La Fontaine v. Dee, 68 N. W., 220.

The fact that the registered deed to Kountze was made in trust for the land and cattle company, the party taking possession, being shown only by the uncorroborated testimony of an interested witness, it was error to take from the jury the question whether the possession was held under that deed. Coats v. Elliott, 23 Texas, 613; Pridgen v. Walker, 40 Texas, 136; Gonzales v. Adoue, 56 S. W., 548; Sonnenthiel v. Brewing Co., 172 U. S., 408; Hobart National Bank v. Fordtran, 122 S. W., 413; Grace v. Hanks, 57 Texas, 14-15.

The land and cattle company could not prescribe under a registered deed to Kountze. Sorley v. Matlock, 79 Texas, 307; Cook v. Dennis, 61 Texas, 248; Dunn v. Taylor, 102 Texas, 85; Gillum v. Fuqua, 61 S. W., 959; Logan v. Robertson, 83 S. W., 395-400; Lackey v. Bennett, 65 S. W., 651, and authorities there cited.

The plaintiffs in error, not being barred by the statute of five years limitations, at the time the Henry Parker League was subdivided into small tracts, and these tracts placed upon the market and a part thereof sold, this of itself would constitute such a break as would stop the statute of limitations. Turner v. Moore, 81 Texas, 206; Beaumont Pasture Co. v. Polk, 55 S. W., 614; Allen v. Boggess, 94 Texas, 85.

*Gill & Jones, R. A. John, Gaines & Corbett, W. W. King,* and *G. G. Kelley,* for defendants in error.—When the league of land in controversy was patented to Henry Parker, he thereby acquired the

legal title to the whole, and held in trust for the heirs of his deceased wife the equitable title to one-half, and when he conveyed the entire league to Wm. E. Parker, under whom the defendants deraign title, they thereby acquired the legal title to the whole aforesaid league, and can urge the statute of limitation of three years against the equitable title asserted by the heirs of the deceased wife. Baldwin v. Root, 90 Texas, 546; Grigsby v. May, 84 Texas, 240; Burleson v. Burleson, 28 Texas, 383; Browning v. Pumphrey, 81 Texas, 163; Hill v. Moore, 62 Texas, 610; Patty v. Middleton, 82 Texas, 592; Edwards v. Brown, 68 Texas, 329; Ross v. Kornrumpf, 64 Texas, 394; Sanborn v. Schuler, 86 Texas, 116; Kirby v. Moody, 84 Texas, 203; Stiles v. Japhet, 84 Texas, 91; Pauncey v. May, 76 Texas, 565; Daniel v. Mason, 90 Texas, 240; Hensley v. Lewis, 82 Texas, 595; Brown v. Elmendorf, 87 Texas, 56; Holland v. Couts, 98 S. W., 231; Clark v. Cattron, 23 Texas Civ. App., 51, 56 S. W., 99; Eastham v. Sims, 11 Texas Civ. App., 135; Bass v. Davis, 38 S. W., 270; Randolph v. Junker, 1 Texas Civ. App., 523.

The will, with the recitals therein contained, that the other community heirs had received their portion of his estate, constitutes color of title; and defendants, deraigning title thereunder, are entitled to plead the statute of limitation of three years. Rev. Stats., arts. 3340 and 3341; Pearson v. Burditt, 26 Texas, 173; Erhard v. Hearne, 47 Texas, 469; League v. Rogan, 59 Texas, 434; Grigsby v. May, 84 Texas, 252; Watrous v. McGrew, 16 Texas, 513; Dailey v. Starr, 26 Texas, 565; Garner v. Lasker, 71 Texas, 435; Hensel v. Kegans, 79 Texas, 349; Harrison v. McMurray, 71 Texas, 128; Box v. Word, 65 Texas, 166; Clark v. Cattron, 23 Texas Civ. App., 51, 56 S. W., 99; First Greenleaf on Ev. (16th ed.), sec. 108.

That there were lands within the pasture of the Texas Land & Cattle Company owned and claimed by other people, did not affect the adverse possession of said company, see Brown v. O'Brien, 11 Texas Civ. App., 459; Taliaferro v. Butler, 77 Texas, 578; League v. Buena Ventura Stock Co., 2 Texas Civ. App., 448; Church v. Waggoner, 78 Texas, 203; Parker v. Newberry, 83 Texas, 431; Watkins v. Cates, 24 Texas Civ. App., 385.

The size of the pasture did not affect the question. Harris v. Bryson, 34 Texas Civ. App., 532, 80 S. W., 105.

That falling down of fences and temporary breaches therein do not interrupt the statute, see Gunter v. Meade, 78 Texas, 634; Williams v. Rand, 9 Texas Civ. App., 636; Moore v. McCown, 20 S. W., 1113.

That Gainor's possession was not adverse to the company, and was the constructive possession of the company to the whole league, see Juneman v. Franklin, 67 Texas, 411; Bruce v. Richardson, 26 Texas Civ. App., 615, 64 S. W., 785; Mattfeld v. Huntington, 17 Texas Civ. App., 716, 43 S. W., 53; Saxton v. Corbett, 122 S. W., 75; McCamant v. Roberts, 80 Texas, 325; Parker v. Cockrell, 31 S. W., 221; Harris v. Iglehart, 113 S. W., 170; Horton v. Crawford, 10 Texas, 388; Cun-

ningham v. Frandtzen, 26 Texas, 38; Evitts v. Roth, 61 Texas, 83; Ramirez v. Smith, 94 Texas, 191; Brownson v. Scanlan, 59 Texas, 226; Dunn v. Taylor, 42 Texas Civ. App., 241, 94 S. W., 347; Neyland v. Lumber Co., 26 Texas Civ. App., 417, 64 S. W., 696; Texas Land Co. v. Williams, 51 Texas, 52.

That the possession of Branch and McFadden, the tenants of the Texas Land & Cattle Company, of the various tracts of land sold by it in 1892, and later, was the possession of the purchasers and supported their plea of limitation, see Heflin v. Burns, 70 Texas, 353; Davidson v. Wallingford, 88 Texas, 623; Jacks v. Dillon, 6 Texas Civ. App., 195.

That the Texas Land & Cattle Company could claim by limitation under the five years statute under the deed to Aug. Kountze, see Thomson v. Weisman, 98 Texas, 170; Kirby v. Hayden, 99 S. W., 746.

The possession of W. E. Parker and subsequent purchasers under their deeds put the statutes of limitation in motion, and it was not necessary that it be shown that the plaintiffs had actual notice of such adverse holding. Church v. Waggoner, 78 Texas, 200; Jacks v. Dillon, 6 Texas Civ. App., 192; Byers v. Carll, 7 Texas Civ. App., 423; Miller v. Gist, 91 Texas, 340; York v. Hutcheson, 37 Texas Civ. App., 367; Meriman v. Blalock, 122 S. W., 403; Hardy Oil Co. v. Burnham, 124 S. W., 225; Cryer v. Andrews, 11 Texas, 181; Mayes v. Manning, 73 Texas, 46; Puckett v. McDaniel, 8 Texas Civ. App., 633; Humphreys v. Edwards, 89 Texas, 518.

That subdivision of the league did not destroy adverse possession, see Robinson v. Jones, 2 Texas Civ. App., 321.

That the possession of the Texas Land & Cattle Company, through its tenants, was the possession of the purchasers, see Heflin v. Burns, 70 Texas, 353; Davidson v. Wallingford, 88 Texas, 623; Jacks v. Dillon, 6 Texas Civ. App., 195.

*Gill & Jones* filed brief in the Court of Civil Appeals for the Paystreak Oil Company, defendant.

*Baker, Botts, Parker & Garwood* filed brief in the Court of Civil Appeals for defendant Rio Bravo Oil Company.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The suit was by James H. Burnham and others, representing the interest of Emily Parker, a daughter of Henry Parker and Henrietta Parker, his wife, for approximately an undivided one-fourth interest in a league of land originally granted to Henry Parker, constituting community property of himself and wife, Henrietta, conveyed by Henry Parker, after the death of his wife, to his son, Wm. E. Parker, to whom, by the will of Henry Parker, which was duly probated, it was also devised.

The defendants held the title thus conveyed and devised to Wm. E.

Parker. Against the suit of plaintiffs, they pleaded limitation under both the three and five years statutes. Their plea of limitation under the five years statute was sustained by the trial court as against all the plaintiffs, and under that defense a general verdict in their favor was directed. The judgment was affirmed by the Court of Civil Appeals as to all of the plaintiffs except two. As to those two, Mrs. Emma Irene Legge and Herbert Farjeon, because of their minority at the time of the death of their mother, a daughter of Emily Parker, it was held that the evidence did not conclusively establish that they were barred under the five years statute as to all of the land; and as to them, accordingly,—except as to 1008 acres awarded by the trial court to the defendant, the Northern Irrigation Company, as to which the judgment was affirmed against all of the plaintiffs,—the judgment was reversed and the cause remanded for further trial. 147 S. W., 330.

All of the plaintiffs applied for a writ of error at a time before the Amendment of 1913, relating to the jurisdiction of this court, became effective. The writ was granted, generally. It conclusively appears that the Northern Irrigation Company has a good limitation title under the five years statute to its 1008 acres against all the plaintiffs. The decision of the Court of Civil Appeals did not practically settle the case as between Mrs. Legge and Herbert Farjeon and the other defendants. It was not so claimed in the petition for writ of error. Nor did the petition bring the case as between them within any of the other exceptions defined in article 941, Revised Statutes of 1895, giving this court jurisdiction of a reversed and remanded cause. The case has been considered, therefore, only in its relation to those plaintiffs against whom the trial court judgment was affirmed.

A careful review of the record and, in particular, the testimony which it is urged in the petition for writ of error presented an issue as to title in the defendants under the five years statute of limitation, convinces us that the ruling of the Court of Civil Appeals upon that question was correct. The affirmance of its judgment accordingly results. This would ordinarily render unnecessary any discussion of another defense in the case. But since it is asserted that some confusion exists in the decisions of the court upon the question of the application of the three years statute of limitation to a case of this character, we deem it best, in view of the importance of the question and its general interest, to give it some attention, particularly since a branch of the case is to be retried, where it is doubtless intended to again urge this defense. We will, therefore, discuss this question before turning to the features of the case which in our opinion entitle to affirmance the holding of the Court of Civil Appeals as to the defendants' title by limitation of five years.

The grant of the league was in the name of Henry Parker. It showed upon its face that the land was the community property of himself and his wife, Henrietta, then living. It was owned by the community at the time of Henrietta Parker's death, in 1835. There

was no partition of the community property between Henry Parker and the children of himself and his wife, Henrietta, of whom, as stated, Emily Parker, through whom the plaintiffs claim, and who married James G. Burnham, was one. The conveyance of the league by Henry Parker, after his wife's death, to Wm. E. Parker was not for the purpose of paying debts of community, but for a stated consideration of $500.

Holding by regular conveyances the title to the league acquired by Wm. E. Parker through Henry Parker's deed and will, the defendants contend that they have "title" by a regular chain of transfer from the sovereignty of the soil, and are, therefore, entitled to invoke the three years statute of limitation. Under a similar contention the contrary was, at an early time, expressly held in Veramendi v. Hutchins, 48 Texas, 531, and in other cases. This ruling has never been departed from or varied by any express decision. It was reaffirmed as late as Cole v. Grigsby, 89 Texas, 223, 35 S. W., 792.

But it is urged by the defendants that at the time of such decisions as Veramendi v. Hutchins it had not been firmly established in the decisions of the court that a grant of community lands in the name of the husband vested in him the legal title, and under such a grant that the wife's title was only an equitable one. On the contrary, it is said, the holding of the court at that time was that the husband and wife each took a legal title to community lands so granted. And this is made the foundation for the argument that when, in Patty v. Middleton, 82 Texas, 586, 17 S. W., 909, it was declared that the husband's title under such a grant or deed is the legal title, and the right of the wife is an equitable interest, changing, it is claimed, the former rule of the court upon that question, there was also changed, in effect, the holding of Veramendi v. Hutchins and like cases as to the character of title acquired under a deed from the husband to community lands so originally granted or conveyed, enabling one, now, who holds such title deraigned from the husband, to prescribe under the three years limitation statute. It is further urged, as we understand the contention, that such is the effect of the later case of Grigsby v. May, 84 Texas, 240, 19 S. W., 343; and that Cole v. Grigsby, 89 Texas, 223, 35 S. W., 292, is in conflict with that decision.

Without an accurate understanding of what is meant by "title," as that term is used in the three years limitation statute, any discussion of this question is futile. It is altogether determined by the legal interpretation of the term as there used. The meaning of the term, as thus used, is well established in the decisions of this court. Their correctness is not open to controversy. To clear this question of all apparent confusion, it is only necessary to apply that interpretation to the character of title conveyed by the deed of Henry Parker in this case.

The word "title," in its ordinary acceptance, may be correctly employed, and often is employed, in entirely distinct senses It is sometimes used to denote a right in property. As thus used, it is equiv-

alent to "estate." It is sometimes used to signify the mere legal evidence of a right, as distinguished from the real right or beneficial interest. It is in this latter sense that the term, "legal title," has its origin. Patty v. Middleton.

As the term is used in this statute, it necessarily means something less than the paramount right to the land. The holder of such a right stands in no need of limitation for the establishment of the superiority of his claim. A statute of limitation of itself implies the existence of a better right than that possessed by the limitation claimant. Likewise, the term as used in the statute necessarily means something more than the right conferred by naked deed, adverse possession under which, though it conveys no title, will, with other requirements met, perfect a limitation title under the. five years statute. Otherwise, there could be no justification for permitting the. title to ripen under a shorter period of possession than is required by the five years statute.

The necessity, as the Legislature viewed it, of quieting by limitation the rights to land of persons who stood in neither of these situations, but who occupied, it might be said, a ground between them, was the cause of the enactment of this statute. In an enactment of such design, this would lead, naturally, to the employment of the term "title," if employed at all, in some strictly technical sense. Hence, its definition in the statute as "a regular chain of transfer from or under the sovereignty of the soil."

This means, in a word, that the claimant, by a regular chain of transfer of itself effectual for that purpose, must possess the purported title originally conferred by the sovereign's grant, the source of the claimant's right. It is not necessary that he hold whatever better right may lie back of the grant. Nor is it essential that any conveyance in the chain subsequent to the grant bestow a higher right than does the grant. The title must simply flow unbrokenly from its source. It is not required at any stage to rise above its source, but it must maintain throughout its succession all of the elements of its source. To have this character and effect, the chain of transfer must, therefore, be such as, in itself, will invest the claimant with the right originally acquired in virtue of the grant. League v. Rogan, 59 Texas, 427; Grigsby v. May, 84 Texas, 240, 19 S. W., 343.

The force of the grant as the source of the right in all cases arising under the statute lies merely in the power of the State as a sovereignty, whether rightfully or wrongfully exercised, to make the grant. The whole theory of the statute is that a right evidenced by a grant from the sovereignty, though it be not the better right, is entitled to a measure of protection; that the State ought not to leave helpless against even the superior right those whom it has encouraged to acquire a title on the faith of its own sovereign act in granting it. But while such a title, where held by a regular chain of transfer connecting with the grant, is, through this statute, given the protection of limitation perfected by, relatively, only a short period of possession, the reason that

in its origin it is so protected is simply because of the State's power to create it. If there be a want of power to issue the grant, it does not amount to a grant, and will not constitute the basis of a transfer of title from the sovereign. Smith v. Power, 23 Texas, 33; League v. Rogan.

With the right, in its inception, afforded the protection of the statute only because of the power of the sovereign to confer it, there must continue in those whose successive transfers constitute the chain of title, the power to convey it. Such power is necessary to effectually transfer the title; unless it exists, the title does not connect by unbroken chain with the grant.

The statute does not recognize as "title" any mere apparent right to the land granted. While it has reference only to the title originally evidenced by the grant, and disregards all other title, at no stage does it deal with any apparent right under that title, or with any right less than the actual "interest" or "estate" created by the grant. The claimant's title must connect with the grant. It does not connect with the grant unless he holds the right vested by the grant. He does not hold such right, unless he has acquired, to the extent that the grant conferred it, the real and beneficial interest in the land. He acquires that interest, if the chain of transfer is sufficient in itself to invest him with it. But the chain of transfer is not sufficient in itself for that purpose, if any grantor in the chain is without the legal power to convey what his deed purports to convey.

These propositions are in our opinion self-evident. They are established in the decisions of the court, and are not open to challenge.

For instance, it has been many times declared that one holding by conveyance from another who had formerly parted with his title, does not hold "title or color of title," as those terms are used in the three years limitation statute. Wright v. Daily, 26 Texas, 730; Harris v. Hardeman, 27 Texas, 249; Long v. Brenneman, 59 Texas, 210. "This is so held," it was said in League v. Rogan, "upon the ground of *want of power in the grantor,* resulting from his prior sale and consequent want of title, either legal or equitable, *to pass any title whatever to another.*"

A person holding under the junior conveyance from such a grantor, and paying value in good faith, without actual or constructive notice of the prior conveyance, would acquire the title under the doctrine which protects an innocent purchaser. He would so obtain it because of the apparent right in the grantor to convey it, and his purchase in reliance thereon. He would have the title, by what the law in such a case esteems the better right. But with his grantor having, in fact, parted with his interest by prior conveyance, would it be contended that he had "title," as that term is used in the limitation statute? If so, there may be two regular chains of transfer from the sovereignty of the soil for the same land. Such, however, is not the law. A conveyance by an original grantee or any succeeding grantor in the chain of

title who had previously transferred his interest, is necessarily collateral, and not a part of *the regular chain of transfer* which the statute requires. It is impossible for the title under it to connect with the grant. Grigsby v. May.

In this State the beneficial interests of the husband and wife in community property are equal, whether the grant or deed to the property be in the name of only one of them or to them jointly. Though the grant or deed be in the name of the husband, alone, the "interest" or "estate" of the wife in the property is as absolute as that of the husband. She acquires her interest in virtue of our law governing community property, and the force which that law imparts to a conveyance of the property to the husband during the marriage. She takes under a grant or deed in his name to the same extent that he does; and it is as fully through the grant as is true of his interest, that she is invested with her right.

After her death, the husband may legally convey her interest only for the purpose of paying community debts. He is wholly *without power*, after her death, to convey it for any other purpose. This is so because of his want of ownership of her interest and the refusal of the law to recognize any authority in one person to dispose of another's property unless duly empowered.

Where the grant or deed to community lands is in the name of the husband, the legal title to the lands is in him. The title he has is the legal title because it is the evidence of ownership required by law. With the evidence of title afforded by the grant or deed—the mode of acquiring title as provided by law—thus proving ownership in him, one purchasing in good faith from him, after the wife's death, without notice of the community character of the property or of some fact sufficient to require inquiry, will acquire title to the wife's interest against her heirs, the real owners of it. But this is not so because of any power in the husband to convey the interest. Having no authority whatever to convey it after her death except in the payment of community debts, he has no more real power to convey it to an innocent purchaser than to anyone else. The innocent purchaser, under the conditions named, acquires the title to the interest through the force alone, of the doctrine of equity which refuses to visit loss upon one in his situation, but imposes' it rather upon those who, having the real interest, have been negligent in permitting another to hold the legal evidence of perfect right in himself.

Such is the holding of Patty v. Middleton and of decisions even prior to it, notably, Hill v. Moore, 62 Texas, 610, and Edwards v. Brown, 68 Texas, 329, 4 S. W., 380, 5 S. W., 87. But that holding has no relation to what is meant by "title" under the three years limitation statute. A limitation claimant is not entitled to the protection which is accorded to an innocent purchaser. He derives no aid from equity, nor is he dependent upon any of its doctrines. The statute, alone, is the measure of his right, and meeting its requirements alone

entitles him to its protection. "Title," as used in this statute, does not mean the title which equity may in a proper case bestow. It refers to a title held by legal right as evidenced by a regular chain of transfer from the sovereignty of the soil. For illustration, the claimant's rights are not prejudiced by actual knowledge of the existence of the superior right. By the same rule, they are not bettered by his want of knowledge of its existence. No equitable considerations can make them superior to what they would be without the presence of such considerations. His title is simply such as the chain of transfer, tested by itself, unaided by any equity and unimpaired by any equity, confers. It is not defeated by the rights of others which lie outside of it. Neither is it supported by any rights in favor of the claimant which lie equally without it. Its strength, as well as its weakness, is only that of the chain of transfer which constitutes it.

In this case, the community interest of Henrietta Parker in the league of land did not lie outside of the grant to Henry Parker. It vested in her in virtue of the grant just as effectually as did the other half interest in Henry Parker. The grant was as much the source of her right as his, and evidenced her right no less strongly. His attempted conveyance of her interest, after her death, to Wm. E. Parker not being for a purpose authorized by law, it was of no effect because of his want of power to make the conveyance. This is equally true of the devise to Wm. E. Parker under Henry Parker's will. Wm. E. Parker did not acquire "title" to her interest under either the deed or will. He did not obtain "the interest" of the wife which vested under the grant, and as to such interest, therefore, his title,—the grant and the deed, or the grant and the will, in itself and tested by itself, did not connect with the grant.

Grigsby v. May was decided after Patty v. Middleton. The opinions in both cases were written by Chief Justice Stayton. Each is an enduring monument to his ability and learning. In Grigsby v. May, the holding of Veramendi v. Hutchins, where the same contention was made as is here urged, in reference to the effect of a husband's attempted conveyance of the wife's community interest in lands after her death, was recognized as correct. It was there said:

"That the 'title' of the original grantee, using the word 'title' in the sense of right, interest, or estate, must pass by conveyances subsequent to the patent in order to constitute 'title' or 'color of title,' is too clear for controversy; but it does not follow from this that the conveyance must pass the superior right to the land; and for this reason the conveyance made by Colonel Bowie, referred to in Veramendi v. Hutchins, did give title to one-half of the league of land, but not to the other half, *simply because he had no power after the death of his wife, in the absence of circumstances conferring it, to convey the interest vested in his wife under the grant itself.*"

Further, in that opinion, in speaking of the requirement of this statute that the claimant show a regular chain of transfer from or

under the sovereignty of the soil "conveying what the sovereign's grant purports to convey," this is said:

"The conveyances in the chain must be sufficient to do that (convey what the grant purports to convey), assuming that they are sufficient if they be executed by *the proper persons,* as conveyances of land are required to be, and on their faces purport to convey the land described in the original grant, and be not collateral."

The statement in this quotation as to the conveyances in the chain being sufficient if executed by *the proper persons,* could only mean the persons having the *legal power* to execute them.

The correctness of the ruling in Veramendi v. Hutchins, and the reason therefor, was again expressly recognized in League v. Rogan, in which Judge Gaines, while associate justice, wrote the opinion, in the following language:

"In the case first named (Veramendi v. Hutchins) it was held that a person claiming title to land, community property, sold by a husband after the grant and after the death of the wife, could not, in a suit by the heirs of the wife for one-half of the land, successfully defend under the statute of limitation of three years; for the reason that, as to one-half, the purchaser had neither *title* nor *color of title. This resulted solely from the want of power in the grantor to convey,* and the chain of transfer between the patent and the claimant, under such conveyance, is broken."

Pearson v. Burditt, 26 Texas, 172, 80 Am. Dec., 648, is another decision which illustrates that while the conveyances in the chain need not, under this statute, pass the superior right to the land, yet, to be effectual as conveyances of "what the sovereign's grant purports to convey," they must be executed by persons having the power to do so. There the suit was by an administrator *de bonis non* to set aside a deed of a former administrator, made under an order of the probate court, to Burditt, the defendant, the ground of the action being fraudulent collusion between the former administrator and Burditt. Burditt, among other defenses, pleaded the statute of limitation of three years. It was held that although the deed was subject to be set aside on account of the fraud, it was capable of supporting the defense of limitation under this statute *because of the power of the administrator,* through the probate court order, to make it. See also League v. Rogan for a review of this decision.

In Grigsby v. May, the survey, 290 acres of which were in controversy, was the community property of John Grigsby and his second wife. She and two children of that marriage survived him. Seven children of his former marriage likewise survived him. While John Grigsby had acquired the certificate which formed the basis of the survey in his lifetime, no written transfer of the certificate was made until after his death. A written transfer of it was made to his administrator. Thereafter and subsequent to the death of the second wife, the survey was patented "to the heirs of John Grigsby, deceased, as-

signee of James A. Sylvester." The estate of John Grigsby was partitioned in the probate court between his nine children. Nothing was given to the children of the second marriage, or to a third child of the second wife by a later marriage, on account of the mother's community interest in the survey. In the partition James Grigsby, a son of the first marriage, received the 290 acres of land in controversy, which were duly conveyed to him by the administrator under the order of the court, like conveyances being made to each of the other children of the lands allotted to them. The suit was by heirs of the second wife for her community interest. The defendant Hughes had acquired the title of James Grigsby. The question in the case was as to the capacity of that title to support limitation under the three years statute.

Distinguishing the case of Veramendi v. Hutchins upon the ground that there, the wife of Colonel Bowie, in virtue of the grant in his name, acquired a community interest in the land granted, just as, here, the wife of Henry Parker, in virtue of the grant to him, was invested with a similar interest in this league, it was held that the patent "to the heirs of John Grigsby" was necessarily hostile to the wife; that it ignored the right of every other person save "the heirs of John Grigsby," and no one except such heirs took any title under it; that the possession by the heirs of the second wife through her of a superior right to one-half of the land in nowise altered the fact that the title given by the sovereign under the grant was only to "the heirs of John Grigsby"; that one holding that title, as did Hughes, through the proceedings in probate, the administrator's deed to James Grigsby, and subsequent regular conveyances, had the interest of every one recognized by the grant as having any right in the land; that Hughes' title, accordingly, connected with the grant, and entitled him to prescribe under the three years statute. In other words, the interest of the wife was superior to and outside of the grant with which the court was dealing in that case. It was not made to her husband, and created no interest in her favor. It was to "the heirs" of her husband. One holding their title had "all the right which the grant purported to convey," and, therefore, had "title" within the meaning of the statute.

Cole v. Grigsby (89 Texas, 223, 35 S. W., 792) involved a grant of an entirely different nature. It was of community lands, as was that in Grigsby v. May. But the grant was "to John Grigsby," the husband. This makes obvious the distinction between the two cases. The wife of John Grigsby took under the grant, and in virtue of it, to the same extent as did Grigsby. The title held by the defendant Cole, and upon which his plea of limitation of three years was based, was merely such as was deraigned from "the heirs of John Grigsby." This, necessarily, did not embrace the community interest of the wife. He had no title to that interest. As to that interest he did not connect with the grant, and hence had no basis for a plea of limitation of three years against the heirs of the wife. There is no conflict between the two decisions.

In Baldwin v. Root, 90 Texas, 546, 40 S. W., 3, the patent, which was based upon an unlocated balance certificate, was to "the heirs of Jonas Harrison, deceased." The land was community property of Jonas Harrison and his wife, Eleanor, who, with eight children of the marriage, survived him. Prior to the location of the certificate, which was also issued to "the heirs of Jonas Harrison, deceased," and the issuance of the patent, the surviving wife and four of the eight children had conveyed their entire interest in the certificate to Charles Turner, warranting the title to the land to be surveyed thereunder to Turner, his heirs and assigns. Root, the plaintiff, held Turner's title. He sued for three-fourths of the land described in the patent. The patent "to the heirs of Jonas Harrison, deceased," placed the legal title to the land in the eight children. Root had both legal and equitable title to one-half of the land under the general warranty conveyance of the wife and four of the eight children to Turner. As to the remaining one-fourth claimed by him, he asserted an equitable title, derived through the wife's conveyance to Turner, held in trust for Turner by the other four children having the legal title under the patent, and representing one-half of the half to which they held such title and claimed by Root in the right of the wife from whom Turner had purchased it. The defendant Baldwin had the title of these other four children who had not conveyed to Turner. The court held that that title was capable of supporting his plea of limitation of three years against the equitable interest asserted by Root. This was clearly correct, since one holding the title of these four children connected directly with the patent to the full extent of the right conferred upon them by patent. As to such right, the case was similar to Grigsby v. May. It was plainly distinct in its nature from cases like Veramendi v. Hutchins and Cole v. Grigsby, as it is from this one. As in Grigsby v. May, the wife's interest lay outside of the State's grant. In the present case, as in Veramendi v. Hutchins and Cole v. Grigsby, the wife's interest vested under the State's grant.

The discussion of this question has been pursued simply in an effort to make plain the holding of the court upon it. The court's decisions upon it are involved in no confusion, and clearly demonstrate that the title deraigned through Henry Parker in this case was incapable of supporting limitation of three years against the suit of the heirs of Henry Parker's wife for her original community interest in the land.

The directed verdict in favor of the defendants under their pleas of five years limitation, except as to the defendant, the Northern Irrigation Company, rests upon the possession of the land by the Texas Land & Cattle Company, under which they claimed.

The suit was filed October 15, 1908. Wm. E. Parker conveyed the league to Joe and A. Vanham on July 1, 1879. They conveyed it to August Kountze on November 24, 1884. Kountze conveyed it to the Texas Land & Cattle Company on June 21, 1890.

The deed to Kountze was filed for record on January 11, 1886.

There was no issue as to the fact that Kountze acquired the title for the Texas Land & Cattle Company, so there was nothing to submit to the jury in that relation. The Texas Land & Cattle Company was entitled to prescribe under the five years statute in virtue of the deed to Kountze and its registration. Thomson v. Baker, 90 Texas, 170, 38 S. W., 21.

In the spring of 1886 the Texas Land & Cattle Company completed the building of a fence, which, with an artificial barrier, enclosed a very large body of land, estimated as being twenty miles square. This league lay within that enclosure. It took possession at that time of the body of land so enclosed, and held continuous possession, using it as a pasture for cattle until 1897.

Limitation began to run against the plaintiffs as to whom the Court of Civil Appeals affirmed the judgment of the trial court, at the time the land and cattle company's possession commenced under this enclosure. The taxes upon the league were regularly paid. Within the enclosure were lands controlled by persons other than the land and cattle company, but the joint use of the enclosure did not, under the five years statute, render any the less adverse the land and cattle company's possession of the lands within it which it owned and controlled. Taliaferro v. Butler, 77 Texas, 578, 14 S. W., 191; Church v. Waggoner, 78 Texas, 203, 14 S. W., 581; Parker v. Newberry, 83 Texas, 428, 18 S. W., 815; Dunn v. Taylor, 102 Texas, 80, 113 S. W., 265.

The land and cattle company having maintained continuous occupancy and use of the land, under a registered deed, with the taxes regularly paid, for more than five years before the filing of the suit, the only question left in the case as related to limitation of five years against the plaintiffs referred to, is the sufficiency of the fences of the enclosure within which the land lay. Temporary breaks in the enclosure do not arrest limitation. Gunter v. Meade, 78 Texas, 634, 14 S. W., 562; Moore v. McCown, 20 S. W., 1112; Williams v. Rand, 9 Texas Civ. App., 631, 30 S. W., 511. We have carefully examined the evidence as to the maintenance of the fences. We do not think it presents any doubt as to the outside enclosure being sufficiently maintained for more than five continuous years after its completion in 1886. There was in our opinion no issue on that question for the jury's determination. For instance, it is asserted in the petition for writ of error that the witnesses Dowdy and Gainor testified that certain fences inside the larger enclosure, which cut off certain tracts set apart for different colonists, were not kept up and remained from only one to two years; and that the witness Hardy testified "that the outside fences were all down when these fences (the inside fences referred to) were constructed." If it be granted that this is a proper construction of the testimony of these witnesses, the condition of the inside fences is immaterial upon the question. It was only necessary that the outside enclosure be sufficiently maintained. As to the contention that Hardy's testimony was "that the outside fences were all down when these fences

(the inside fences) were constructed," as shown by the petition for writ of error itself the building of the inside fences was not commenced until 1892. The bar of five years, beginning against the plaintiffs referred to, as it did during 1886, was then complete as to them.

As to the testimony of the witness Gainor at another place, that "from the summer of 1888 up to 1908 this pasture was open from the south line thereof to El Campo," we agree with the Court of Civil Appeals that this does not indicate that the south line was not fenced. It indicates, on the contrary, that it was fenced, and that the pasture was merely open country inside from its south to its north line. If the fence he refers to as having been taken down was any part of the outside fence, it is not shown by his testimony or that of others how long it remained down. From aught that appears from his testimony it may have been down only temporarily. At another place he speaks of a fence only remaining for two years, but it was a fence built in 1895. The witness Cornelius testified to a part of the south fence of the larger enclosure being down in 1901 or 1902, but that, too, was after the completion of the five years bar against the plaintiffs referred to. It is unnecessary to further extend this opinion by additional detailed reference to the testimony upon this feature. A painstaking examination of it has been made. In our opinion it presents no issue in respect to the sufficient maintenance of the fence of the larger enclosure for more than five years following the year 1886.

The case was in our view correctly determined by the Court of Civil Appeals, and its judgment is, therefore, affirmed.

*Affirmed.*