## MARY L. PARKER ET AL. V. D. L. NEWBERRY.

### No. 3196.

1. **Quitclaim Deed may be Basis for Limitation of Five Years.**—The essential requisites of a deed necessary as the foundation of the plea of limitation of five years are, that it should, by its own terms, or with such aid as the law requires, assume and purport to operate as a conveyance. A quitclaim deed is sufficient.

2. **Possession to Support Limitation.**—A concurrent possession with others of an inclosure surrounding the lands claimed by the defendant, and tracts owned by others, they using the entire inclosure in common but respecting each the others' rights, but adverse to all others, is a sufficient possession to mature title under the five years statute of limitations. See facts.

3. **Court of Claims—Approving Certificate for Benefit of Original Grantee.** Original bounty certificate issued for services by John P. Smith * * * to his assignee Graves, who caused the certificate to be located. April 2, 1857, the Court of Claims approved it for benefit of original grantee. In 1888 patent issued in name of grantee. *Held,* that while the action of the Court of Claims was not conclusive against parties holding under Graves, still it rebutted the presumptions which might be raised from the recitals in the original certificate and in the field notes, that the survey was made for the assignee.

APPEAL from Bee. Tried below before Hon. H. CLAY PLEASANTS. The opinion states the case.

*Lane & Mayfield* and *Price & Green,* for appellants.—1. A pure, clean, unqualified quitclaim deed will not support the statute of limitations of five years. It is not a deed purporting to convey land, but a mere chance of title—in fact a release.

On quitclaim pure: Harrison v. Boring, 44 Texas, 261; 2 Bouv. Inst., art. 2070; Comstock v. Smith, 13 Pick., 116.

On the constituents of a deed under the statute of limitations of five years: Wofford v. McKenna, 23 Texas, 36; Rev. Stats., art. 557, subdiv. 2; Rev. Stats., art. 558.

Restrictive words in the latter part of a deed control the grant: Rone v. Heath, 23 Texas, 619; Jackson v. Blodgett, 16 Johns., 178; Jackson v. Clark, 7 Johns., 223.

2. The evidence should be clear and conclusive as to full five years of connected and continuous possession of land, etc., to bar the owner's right of entry and to divest him of title therein and invest the possessor with the absolute title thereof; and in this case there is not any evidence of full five years of connected and continuous possession of the survey in controversy by D. L. Newberry and those under whom he holds title. Rev. Stats., art. 3193.

*Beasley & Flournoy,* for appellee.—1. An instrument containing all the formal parts of a deed, and which in the granting clause purports

to convey the land itself, is a deed within the meaning of the five years statute of limitations, notwithstanding it contains in the warranty clause a covenant that it is to be construed as a "quitclaim." Bowles v. Brice, 66 Texas, 724; Richardson v. Levi, 67 Texas, 360.

2. The inclosure by Taylor, Cowie, and Roberts of the land in controversy, together with some 5000 additional acres owned by Cowie, Roberts, Malone, Grover, and Bradley, into one common pasture, and the recognition of each of the said owners of the rights of the other within the inclosure, and their holding and use being absolute and to the exclusion of all other persons, under these circumstances the possession of Taylor as the tenant at will of Beasley would be adverse to the true owner. Taliaferro v. Butler, 77 Texas, 578.

3. The warrant having issued to Graves as assignee of Smith, when the land was patented to Smith, if the legal title thereto did not vest in Graves by estoppel, at any rate the heirs of Smith had but the naked legal title and that in trust for Graves; and the equitable title of said assignee was superior to the legal title of .the patentee's heirs. Act December 4, 1837 (Sayles' Early Laws, art. 358), grants the land; Act April 27, 1846 (Sayles' Early Laws, art. 1659), authorizes the Adjutant-General to issue warrants for the land; Act August 1, 1856 (Sayles' Early Laws, art. 2542), creates the office of Court of Claims and defines the powers and duties of the commissioner.

Equitable title of assignee superior to legal title of patentee: Keyes v. Railway, 50 Texas, 169; Capp v. Terry, 75 Texas, 391; Adams & Wickes v. House, 61 Texas, 640.

The action of the Commissioner of Claims not conclusive of the rights of the parties: Palmer v. Curtner, 55 Texas, 64.

HOBBY, PRESIDING JUDGE, *Section A.*—The appellants, who were plaintiffs below, Mrs. Mary Parker, Mrs. M. E. Hale, and W. T. Smith, brought this action of trespass to try title to the land described, against the appellee, D. L. Newberry, on September 3, 1891. The plaintiffs claimed title as the heirs of John P. Smith, the patentee. The land, consisting of 320 acres, was granted by the State by virtue of a bounty land certificate issued to said Smith by the Adjutant-General, J. S. Gillette, through his assignee, Benjamin Graves, on October 2, 1854. The Commissioner of Claims indorsed on the certificate the following: "Registered and approved for the benefit of John P. Smith, original assignee, April 4, 1857." The patent issued to said Smith on January 12, 1888.

The defendant, D. L. Newberry, pleaded not guilty, and the statute of limitations of five years under a deed duly registered, etc. He also pleaded an outstanding title in James B. Beck, and title in himself thereunder "by prescription."

The cause was tried by the court, and judgment was rendered against all of the plaintiffs except Mrs. M. E. Hale, against whom the statute of limitations did not run by reason of her marriage. She recovered five-twelfths of the land, and the appellee the remainder, under his plea of limitation. Both parties appeal.

The first question raised has reference to the sufficiency of the conveyance under which Newberry claims to support his plea of limitation, and the sufficiency also of his possession. There are other questions raised which will be considered in the order presented. Recurring to the first mentioned, we think that the rule that a purchaser who takes only such interest as is conveyed by a quitclaim deed technically can not under that character of conveyance be protected as a purchaser in good faith, etc., has no application where such deed is made the basis of the five years plea of limitation. Notice, good faith, and the payment of a valuable consideration are important elements, and may become vital in a controversy where title is asserted under a quitclaim deed between parties deraigning their rights from a common vendor. They can not be relied on to support limitation, and form none of the elements of that plea.

The character of the instrument would be unimportant if it be valid, and not void, as a conveyance, and belongs to that class of written instruments. The essential requisites of a deed necessary as the foundation of the plea are, that it shall, "by its own terms, or with such aid as the law requires, assume and purport to operate as a conveyance." Wofford v. McKinna, 23 Texas, 43. It is not necessary that it shall emanate from one having title, or that it shall convey the title. Id. The instrument in this case, the conveyance from Beasley to Newberry, has all of the constituent parts of a complete deed.

Having disposed of this assignment, we come to the question of the sufficiency of appellee's possession. His testimony shows that in March, 1886, he purchased the land involved in this suit from Beasley, together with two other tracts—the Allen 320 acres tract, and the Heald 640 acres survey. All of these tracts, which were adjoining surveys, were embraced in the deed executed by Beasley, and aggregated 1280 acres. When purchased they were in an inclosure made by the owners of lands surrounding appellee. This inclosure contained, in addition to appellee's 1280 acres tract, two tracts of 1280 acres each, belonging to Nelson and Roberts, respectively, and a 320 acres tract of one Grover, making 4160 acres, besides appellee's. He commenced the construction of a fence in July, 1886, which he completed in October, 1886, which separated his tract from those mentioned, except the 320 acres Grover survey, which was also included in his inclosure. Grover sold this tract to one Maley, who, with appellee, used the pasture for grazing stock, each respecting the other's rights. The land was

used only for this purpose, and appellee claimed adversely to the world from the date of his purchase. James O. Taylor testified, that the 1280 acres tract the appellee bought from Beasley was in 1882 inclosed in a larger pasture, consisting of about 7000 acres, by a fence constructed by witness together with other owners of lands lying within said pasture. He had an understanding with Beasley at that time to the effect that he would inclose and use the land, making no claim to the fence, but paying nothing for the use of the land, and that Beasley might sell when he desired to do so. The land was used by the owners respectively for grazing stock.

A careful examination of the facts authorizes the conclusion that we can not disturb the judgment on the ground that it is without evidence to sustain it. Newberry's possession commenced in July, 1886. This suit was brought in September, 1891. If his testimony is relied on exclusively, it can not be said that it does not show five years adverse possession prior to September 30, 1891. When connected with Taylor's possession, which commenced in 1882, there can, of course, be no doubt on this point. It is not stated in positive terms by Taylor that he continued in possession from 1882 until Newberry entered into possession. But he does state facts which are tantamount to this, and certainly authorized the trial judge to so infer. He testified, that there was a contract or understanding between Beasley and himself that he could use the pasture in which this land was situated until he (Beasley) sold it, and that this was the character of his possession. Beasley sold it in March, 1886, to appellee, who went into possession. If he was in possession up to the sale by Beasley, and appellee's possession commenced with that sale, the continuity of the possession was clearly unbroken. The fact that other parties may have been in possession of the separate tracts of land included within the fence or inclosure, and that their stock may have grazed on the land of appellee, and that thus there may have been a concurrent use of the same by others, would not militate against the exclusiveness in a legal sense of his possession, nor make it the less adverse in its character. Especially is this so where that use or concurrent enjoyment of it by others was in subordination to appellee.

The judgment of the court was in favor of Mrs. M. E. Hale for five-twelfths of the land, or about 133 acres, upon the theory that the certificate was the separate property of her father, John P. Smith. There was no error in this. The certificate, it is true, was issued to Smith in 1854, which was subsequent to his marriage. But the recitals in the certificate show that it was issued for services rendered by Smith in the army of the Republic, in 1836 and 1837, which was two years prior to his marriage with appellant, Mrs. Parker. The right to the certificate having accrued to him before his marriage, which occurred in 1839, it

was not affected by the issuance of the certificate, which was the evidence of the right, after his marriage. It constituted a part of his separate property.

The evidence offered by the appellee failed to establish an outstanding title in Beck.

The certificate in this case, No. 1759, was issued for services rendered by John P. Smith in the army of the Republic of Texas, to his assignee Benjamin Graves, October 2, 1854. This assignment was repudiated by the Commissioner of Claims, as appears from his indorsement thereon, April 2, 1857, "registered and approved for the benefit of John P. Smith, original assignee." The patent issued to Smith by virtue of the above bounty warrant, in January, 1888. It appears from the field notes of the survey that the survey was made for Graves in March, 1855. There was a conveyance by Graves of the land to James B. Beck, of Kentucky, in June, 1856. In this connection it was proposed to prove by the witness Beasley, that he "bought the land at tax sale in 1882, was informed that Beck owned it, and wrote him that he could redeem it, but Beck failed to do so, although he claimed the land. This testimony was offered by the appellee for the purpose of showing an outstanding title in James B. Beck to the land, and that he held this title by prescription.

The only evidence tending to show that the certificate or bounty warrant had been sold and transferred by Smith to Graves was the recital on the face of the certificate, and the fact that it appeared from the field notes that the survey was made for Graves. There could have been no sale and delivery of it by Smith to Graves, because the former died eight years before its issuance. The effect of the recital on its face, showing that it was issued to Graves as assignee, was destroyed by the indorsement of the Commissioner of Claims, in April, 1857, approving it for "the benefit of John P. Smith, original assignee," which, under the Act of 1856 authorizing that officer to pass on the genuineness of such assignments, amounted to a repudiation of the assignment or a finding against it. Sayles' Early Laws, art. 2542. While this action of the Commissioner was not, it has been held, conclusive as to the assignee, in view of the legislation on that subject, together with the issuance of the patent to the original grantee, it was sufficient to preclude the court from presuming, "from mere lapse of time," that there had been a legal transfer of the certificate. Walker v. Caradine, 78 Texas, 493. The only circumstance on which the presumption of a transfer could be based in this case would be the fact that the field notes of the survey recited that it was made for Graves. This alone, we are of opinion, would be no more sufficient as a predicate for the presumption of a lawful transfer than the lapse of time in the case cited. In either case the fact must be presumed. The proof support-

ing the presumption is not stronger in this case than in the case referred to.

Our conclusion is, that there was no proof of a valid transfer of the certificate to Graves; and this being so, the defendant failed to ·establish his plea of an outstanding title.

We think the judgment should be affirmed.

*Affirmed.*