ESSER v. KNEUPPER et al.   (No. 6034.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1918. On Motion for Rehearing, June 19, 1918.)

1. APPEAL AND ERROR ⬅931(1)—FINDINGS —REVIEW.

Trial court having found for defendant, court on appeal will resolve all conflicts in the findings of fact in defendant's favor.

2. ADVERSE POSSESSION ⬅60(2) — AGREEMENT BETWEEN LANDOWNERS.

Where, in fencing their land, defendants procured permission from adjoining landowner to make an offset in their fence for a short distance so as to inclose a parcel which was concededly his land, adjustment to be made later, held, there was no adverse possession under 10-years statute as to such parcel, where no further agreement was made which would give notice that such land was being claimed.

3. ADVERSE POSSESSION ⬅66(1)—FENCES.

Where an adjoining landowner at the time that defendants erected a fence inclosing their land knew that they claimed all the land inclosed except a parcel of his land which was included by an offset in the fence, defendant's holding, except as to the parcel included by offset, would be adverse, although the fence, had it been run in a straight line, would not mark true boundary.

4. ADVERSE POSSESSION ⬅112 — TRESPASS TO TRY TITLE ⬅47(1)—BURDEN OF PROOF —JUDGMENT.

In suit for certain land described by metes and bounds and inclosed by defendant's fence, the burden was on defendant to show what portion he was entitled to, and, where he showed title only to part, the court erred in refusing judgment for plaintiff for the remainder because it was not described in the pleadings or evidence so that a description thereof could be made in the judgment.

5. ADVERSE POSSESSION ⬅85(3) — ADVERSE CLAIM—EVIDENCE.

In suit by plaintiff, adjoining landowner, to recover land inclosed within defendants' fence, evidence held to warrant a finding that defendants claimed to the fence except for a short distance where the fence departed from the line originally adopted.

6. ADVERSE POSSESSION ⬅36 — CHARACTER OF HOLDING.

That the land claimed by plaintiff was contained in an inclosure containing land owned by both defendant and his father, and that the in-

closure was jointly used by both, would not prevent defendant from acquiring title by adverse possession, where the land was claimed by him and not by his father, the use of the land by the father in such case being in subordination to that of the son.

Appeal from District Court, Kendall County; R. H. Burney, Judge.

Suit by Paul Esser against Henry Kneupper and another. Judgment for defendant named, and plaintiff appeals. ,Reversed.

W. C. Linden and Joe H. H. Graham, both of San Antonio, for appellant. W. A. Wurzbach, of San Antonio, and W. F. Hays, of Boerne, for appellee.

MOURSUND, J. This is a suit by Paul Esser against Peter Kneupper and Henry Kneupper to recover ,approximately 97 acres of land, described .by metes and bounds, in plaintiff's second trial amendment, alleging that said land is a part of survey No. 798, B. F. M. & I. Company, in Kendall county, and inclosed within the fence of defendants. Peter Kneupper disclaimed, and Henry Kneupper answered by plea of not guilty and pleas of title by limitation under the five and ten year statutes. Judgment was rendered that plaintiff take nothing by his suit.

We shall not undertake to copy all of the findings of fact filed by the trial court, as they are lengthy, and many are not attacked.

By agreement, questions as to title were eliminated, and the questions to be decided were: Is the land in controversy a part of survey 798, owned by plaintiff, or a part of survey 796, owned by Henry Kneupper? And, if it is a part of plaintiff's survey, did Henry Kneupper show title to the land sued for under the 10-year statute of limitation? The trial court found in favor of plaintiff as to the first question and in favor of Henry Kneupper as to the second.

The findings of fact relating to the second question, in so far as they are material, are as follows:

"(6) I find that in the year 1902 the defendants fenced with a four wire fence all of survey No. 796, Mark Hodgson, including all the lands in controversy in this suit, and a few hundred acres of land owned by Peter Kneupper; that ever since said date, and especially since 1904, the defendant Henry Kneupper has had peaceable, continuous, and adverse and exclusive possession of all the land in controversy, using and enjoying the same, and grazing various kinds of stock thereon, either in person or through his father acting for him, but said Henry Kneupper did not reside on the same, and has continuously kept the fences in repair; that at the time it was fenced, in. 1902, the defendant Henry Kneupper was a minor.

"(7) I find that at the time the land was so fenced by the defendants, or some time just prior thereto, Peter Kneupper obtained permission from one Marion (T. M.) Gourley, who then owned said survey 798, in order to avoid a deep ravine on the north line of said fence, to run the fence a bit north of where defendants claimed the north line of said survey No. 796 to be, which was permitted, an offset was made in the fence for a short distance, and thus was made to include a small parcel of land (about one acre) that the said Peter Kneupper admitted was part of survey 798, or the said Gourley's land; at the time of this arrangement, which was verbal, the said Peter Kneupper told said Gourley that, in exchange for the said small parcel of land, he would give him, Marion Gourley, a half interest in said line of fence when he got ready to fence his said survey 798, or, if this was satisfactory, they would buy the land or move the fence as he (Gourley) might prefer.

"(8) I find that said Marion Gourley, in July, 1904, sold and conveyed said survey No. 798 to S. D. Givens, one of the plaintiff's predecessors in title.

"(9) I further find that, so far as the evidence shows, no other or further agreement or understanding about said line of fence was ever had by the defendants, or either of them, with the said Marion (T. M.) Gourley or any one else, neither does the evidence show when survey No. 798 was fenced, but I find that it was under fence in 1912, and that Guss Ross, plaintiff's vendor in the deed from him to plaintiff of date February 17, 1912, recites that he conveys to the plaintiff a half interest in said fence (is on his south line 798); that no statement, promise, or agreement of any sort was made by Henry Kneupper to any one about permission to place said part of the fence on survey 798.

"(10) I find that neither the pleadings of the plaintiff nor defendant, nor any evidence or plat offered on the trial of this case, describes the small parcel or strip (about one acre) of land which Peter Kneupper got permission in 1902 from T. M. (Marion) Gourley to inclose when constructing the fence along what he and Henry Kneupper claimed was the north line of survey No. 796, so that the same could be specifically described in any judgment entered in the case."

[1] By appropriate assignments appellant attacks the findings above set out, and the conclusion of law based thereon. As the court found in favor of Henry Kneupper, we will, of course, resolve all conflicts in his favor. It appears that when Peter Kneupper, acting for his son, Henry, decided to fence survey No. 796, he undertook to place the north fence on a straight line between two rock piles, which he regarded as marking the northwest and northeast corners of survey No. 796, the pile of rocks which he took to mark the northwest corner being situated in the west line of survey No. 798, and described by reference to a Spanish Oak tree which bears S., 45° E., 20 varas therefrom. He stated, in answer to a question by the court, that he claimed from the rock pile where he built the fence across to the other rock pile; meaning, as is shown by the way the fence runs, the rock pile with the Spanish Oak bearing tree. He constructed the fence for a distance of 1,177 varas on a straight line running S., 89° 30' E., as shown by the field notes of the land inclosed by Kneupper's fence sued for by plaintiff. He then constructed the remainder of the north fence according to the following courses and distances: North, 60° 30' E., 26 varas; north, 20° E., 51 varas; north, 72° 30' E., 28 varas; north, 82° E., 127 varas; S., 71° E., 64 varas, to the E. line of survey No. 798; S., at 49 varas, a stone mound from which a Spanish oak bears S., 45° E., 20 varas. The last call, which is a part of the east fence,

instead of the north fence, is given only to show the location of the stone mound with reference to the location of the fence. The straight line was departed from in building the fence because of the extreme difficulty of continuing the fence on a straight line on account of a creek or gully, and Kneupper encroached upon land which he recognized as belonging to Gourley, plaintiff's remote predecessor in title. Before doing this he made the agreement with Gourley set out in the court's seventh finding of fact. The ninth finding, in so far as it states that no other or further agreement was ever had by the defendants or either of them with Gourley or any one else, is supported by the evidence.

[2] It therefore appears that while Gourley was given to understand that Kneupper claimed the land south of the straight line running S., 89° 30′ E., he did not claim the land north of such line; and, as no further agreement was made such as would put Gourley on notice that said land was being claimed, it seems clear, and we so find, that as to said land there has been no adverse possession for such time as is necessary to establish limitation under the 10-year statute. It appears from the deed by Ross to plaintiff that Ross claimed a half interest in the fence, but it does not appear upon what he based his claim, or that Gourley ever made such a claim, or undertook to make any verbal sale of the small parcel of land in consideration of a half interest in the fence.

[3] As to the land lying south of a line run from the beginning corner of the fence S., 89° 30′, to the west line of survey No. 798, the claim of Kneupper was adverse, as Gourley was bound to have known, taking Kneupper's testimony as true. The court finds that Henry Kneupper made no promise or agreement concerning permission to place the fence on what was recognized as Gourley's land, and that is true, but we regard it as immaterial. The agreement was made in his behalf by his father and in his presence. His father held possession of the land for him while he was a minor, and such possession as to the parcel inclosed under the agreement was permissive. Henry Kneupper failed to show adverse possession thereof for the statutory period.

[4] It appears from the tenth finding that the court was probably moved to deny plaintiff said parcel of land solely on the ground that it was not described in the pleadings or the evidence so that a description thereof could be made in the judgment. We do not believe that fact would justify a judgment against plaintiff as to such parcel. The burden was upon defendant to show what portion of the land he was entitled to by virtue of the statute of limitation. The court erred in rendering judgment that plaintiff

take nothing by his suit, as defendant failed to show title by limitation to such parcel.

In addition to the contention made by appellant that Henry Kneupper's possession as to all the land in controversy was permissive, which has been discussed above, he contends that, even though the possession was not permissive, the claim on which limitation is based did not extend to the land in controversy, but only to the true boundary line of No. 796, and therefore no claim to any part of No. 798. The evidence supports a finding that the Kneuppers believed the true line to extend from the rock pile on the west, at which they began the fence, to the rock pile on the east, designated by reference to the Spanish Oak bearing tree; that they undertook to fence this line, and that Gourley knew they were claiming to the fence except at the place hereinbefore mentioned. The claim of ownership was up to the fence as located, and, even though the claim of title resulted because of a mistake as to the line, nevertheless there was testimony showing a clear intention to claim the land as far as it would have been inclosed had the fence been completed on the course used in building the first 1,177 varas.

Appellant's claim is based upon variances in the Kneuppers' testimony upon the two trials of the case, but upon this trial they testified that they claimed to the fence, except as to the small parcel recognized as Gourley's, and a consideration of their testimony as a whole shows that such was their claim, although upon cross-examination on the former trial Peter Kneupper testified that they claimed no part of No. 798, but only 796, and Henry Kneupper stated that he had always claimed just the land called for in his deed from Elbel, but at the same time said he claimed the fence to be the north line of No. 796.

[5] The court was authorized to find that they claimed all land lying south of the 1,177 varas of fence and a line projected from the said part of the fence to the east line of the survey on the course used in constructing said fence. The facts in the case of Shaw v. Windham, 155 S. W. 636, relied on by appellants, were very different, taking into consideration the testimony believed by the respective courts.

[6] The further contention is made that the possession was not adverse for the reason that the land in controversy is contained in an inclosure containing land owned by Peter Kneupper as well as that of Henry Kneupper, and such inclosure was jointly used by both of them for grazing purposes. The land in controversy was claimed by Henry Kneupper and not by Peter Kneupper. It was inclosed under the belief that it was a part of Henry Kneupper's survey, with the exception of the small parcel recognized to be a part of Gourley's survey. The use of such land by Peter Kneupper was in subor-

dination to Henry Kneupper. The possession and use were sufficient under the statute to vest title by limitation in Henry Kneupper. Watkins v. Cates, 24 Tex. Civ. App. 384, 59 S. W. 1123; Parker v. Newberry, 83 Tex. 428, 18 S. W. 815; Glover v. Pfeuffer, 163 S. W. 984.

The judgment of the trial court is reversed in so far as it affects plaintiff and Henry Kneupper, and this court, proceeding to enter such judgment as should have been entered by the trial court, adjudges that plaintiff recover of defendant Henry Kneupper the small parcel of land out of the tract in controversy which lies north of the continuation of the line described in the field notes of the land in controversy as running S., 89° 30' E., 1,177 varas, and that as to the remainder of the land in controversy plaintiff shall take nothing by his suit. It is further adjudged that Henry Kneupper be allowed 30 days from the date this judgment is certified to the trial court for observance, in which he may withdraw his fence situated on the parcel of land awarded to plaintiff, and place same on the line of the land herein awarded him. All costs incurred in the trial court, except those incident to making Peter Kneupper a party to the suit, are adjudged against Henry Kneupper, as well as the costs of appeal. The judgment, in so far as it relates to Peter Kneupper, is not involved in this appeal, and will not be disturbed.

## On Motion for Rehearing.

In the original opinion the statement was made that the pile of rocks which Peter Kneupper took to mark the northwest corner of survey No. 796 was situated in the west line of survey 798, and described by reference to a Spanish Oak tree which bears S., 45° E., 20 varas therefrom. This mistake was one made in writing, and not by reason of any belief that the rock pile described by the bearing tree was the one taken by Kneupper as being the northwest corner of survey No. 796; for it was fully understood from the field notes of the land sued for, which had to be carefully examined in drawing the judgment, that such rock mound was in the east line of survey 798, and the intention was to state that it was taken by Kneupper to be the northeast corner of survey No. 796. The fact is that we were mistaken in assuming that it was the mound referred to by Kneupper as the one he took to be the northeast corner of No. 796. The testimony of both of the Kneuppers shows frequent reference to a map or plat not contained in the statement of facts, and many of such references were not accompanied with explanations such as would make the testimony clear to a person who did not see the witness point to the map while testifying. Peter Kneupper testified concerning two rock piles, and, in answer to a question by the court, stated he claimed from the rock pile where he built the fence across to the other rock pile. The rock pile, with the bearing tree, is located about on a line with the fence; and, overlooking the fact disclosed by the field notes, there being no map or plat, that the east lines of surveys 798 and 796 do not connect, it was assumed that Kneupper referred to said mound as one of the two between which he undertook to erect his fence. This error caused us to infer that the fence ran south from the point where it intersects the east line of survey No. 798.

Appellants contend, further, that we erred in stating that the fence was begun at the place taken to be the northwest corner, and erected for a distance of 1,177 varas before it became necessary to make the offset into what was recognized to be Gourley's land. They contend that the Kneuppers began on the east, at the rock pile pointed out by John Kneupper as the northeast corner of No. 796, and worked towards the west. This contention is supported by the testimony of Peter Kneupper, but Henry Kneupper stated that they started "on the northwest corner of survey No. 796," and, taking his testimony as a whole, we understood it as supporting the conclusion announced by us. Of course, if there is a conflict, it must be decided in favor of the trial court's findings. Upon a reconsideration of Henry Kneupper's testimony as a whole, we find it confusing, and conclude we should adopt appellant's contention as true, that the Kneuppers began the fence at the mound pointed out by John Kneupper, and situated about 514 varas east of the east line of survey No. 798. The fence was then constructed on a straight line west for 462 varas. Peter Kneupper testified it was run on a straight line and Polk testified to the distance. At such point, 462 varas west, the fence bends north, and from the testimony of Peter Kneupper it is apparent that this point is the beginning point of the bend into what he recognized to be Gourley's land, which bend was made for the purpose of getting around the ravine. Polk ran west from a point 8 varas south of the beginning point of the fence, and found that the fence bent slightly north, so that when he reached a point 1,838 varas from the beginning he was 30 varas south of the fence line. This corresponds to the field notes of the land in controversy, which shows that the fence, after running around the ravine, was continued on a straight line for 1,177 varas on a course running one-half degree north of west. It therefore appears, also, that for a distance of about 1,639 varas out of 1,838 the fence indicated the adoption of a definite line, and that only for a short distance was there any departure from such line, and that was made for the purpose of running around a deep ravine, and Gourley's consent was obtained before such bend was made. Appellants assume that we attached great, if not controlling, importance to the fact that the fence was begun on the west and the agree-

ment made with Gourley after 1,177 varas thereof had been erected. We regard it as immaterial whether the agreement was made before or after the 1,177 varas of fence was erected. Peter Kneupper testified that Gourley asked him if he was going to fence, and he told Gourley he wanted to have everything right; to get an engineer and take Gourley along; and at that time Gourley's daughter-in-law was ill, and Gourley told him to fix the fence at Kneupper's expense and he would pay Kneupper afterwards. He also testified that he started to go straight through in building the fence, and saw he could not do it, so he went to Gourley, and got his permission to run on Gourley's land in order to get around the deep ravine. He also testified that all of the fence is straight except that around the ravine. All of this testimony must be taken as true in deference to the court's findings. As Gourley knew that Kneupper intended to fence his land, and was informed after about 460 varas had been built that Kneupper found it advisable to depart from the line adopted by him, and go on Gourley's land in order to get around a ravine, and knew that afterwards the straight line was resumed, he certainly knew that the Kneuppers claimed the land south of such straight line, and that they only recognized his ownership as to that lying north of such line.

We are unable to find any statement in the original opinion which we consider sufficient to justify the statement in the argument in the motion for rehearing to the effect that, "according to this court's opinion, Kneupper bound himself to hold for Gourley and his assignees every foot of Gourley's land that he might take by the fence which he was thereafter to build." We certainly had no intention of holding that Kneupper made any agreement binding himself to hold for Gourley any land except that inclosed by reason of running around the ravine, and we had no intention of holding that permission to run around the ravine would as a matter of law show that all land in fact belonging to Gourley inclosed after making such agreement would be held permissively and not adversely.

We conclude that the facts, as corrected, show that the court was authorized to find that the possession of the Kneuppers was adverse as to all land lying south of the line upon which the 1,177 varas of fence was erected. It is deemed unnecessary to further discuss the other questions in the case.

The motion for rehearing is overruled.