**PETTY et al. v. GRIFFIN et al.　(No. 758.)**

(Court of Civil Appeals of Texas. Beaumont. April 25, 1922. Rehearing Denied May 3, 1922.)

1. **Adverse possession 36—Not impaired by concurrent possession of others in subordination to claim.**

Concurrent possession and use of land by others in subordination to claim of title by adverse possession does not prevent the acquisition of title by the claimant.

2. **Adverse possession 36—Need be adverse only as to record owner.**

Title may be acquired by possession which is adverse and hostile as to the record owner, though not as to the world.

3. **Adverse possession 36—Not impaired by membership in family of a nonclaimant who has concurrent possession.**

The efficacy of the possession of an adverse claimant of title is not affected by the fact of his living as a member of the family of his father who has concurrent possession and use of the land without claiming title thereto.

4. **Infants 24—May gain title by adverse possession.**

The minority of a claimant does not defeat his acquisition of title by adverse possession, though he lives as a member of the family of his father, who has concurrent possession and use of the land without claiming title thereto.

5. **Appeal and error 1060(1)—No error in argument construing court's charge.**

Argument of plaintiffs' counsel construing the court's charge, which did not require exclusive possession, as meaning that plaintiffs' predecessor's possession, along with that of others, was sufficient adverse possession, held, if error, harmless, as the jury could not have been misled.

6. **Adverse possession 116(3) — Statutory definition applicable; "claim of right."**

The definition of "adverse possession," in the language of Rev. St. 1911, art. 5681, as "an actual and visible appropriation of the land, commenced and continued under claim of right inconsistent with and hostile to the claim of another," "claim of right" being defined as "an intention to claim the land as his own," was properly applied, where another had had concurrent possession and use of the land with the claimant without claiming title therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adverse Possession; Claim of Right.]

7. **Appeal and error 216(2)—Charge as to which no special instruction was submitted not reviewable.**

Complaint cannot be made of a charge as containing too narrow a definition of adverse possession unless a special charge on the matter was submitted.

8. **Trial 192—Judge may assume undisputed fact.**

In a charge to the jury the court may assume the existence of an undisputed fact.

---

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Trespass to try title by J. M. Griffin and others against V. A. Petty and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Smith & Crawford, Oliver J. Todd, and R. E. Masterson, all of Beaumont, for appellants.

Gordon & Parker, of Beaumont, and Coe & Combs, of Kountze, for appellees.

O'QUINN, J. This is a suit of trespass to try title brought by appellees against appellants to recover title to 160 acres of land, the southwest one-fourth of the Elisha W. Wallis 640-acre survey in Hardin county, Tex. The case was tried before a jury, and judgment for appellees was rendered upon the answers of the jury to such issues; the said issues and answers thereto so far as are necessary to a disposition of the case, being as follows:

(1) "Did Ivy Griffin have peaceable and adverse possession of any portion of the southwest quarter of said Elisha Wallis survey of 640 acres, cultivating, using, or enjoying the same for ten years or more prior to January 1, 1920? Answer 'Yes' or 'No.'" Answer: "Yes."

(2) "When did such adverse possession and cultivation, use, or enjoyment begin, and when did it end? Give the dates as accurately as you can determine them from the evidence." Answer: "From 1867 or 1868 until 1893."

(3) "Did Ivy Griffin claim 160 acres of said Wallis survey, including his improvements, on the southwest quarter thereof? If so, when did he begin to make such claim and how long did he continuously assert such claim? Give dates as accurately as you can determine them from the evidence, if you find he made such claims." Answer: "From 1875 until deeded to his sons."

(4) "If 160 acres are awarded to plaintiffs out of said Wallis survey including within the boundaries of the 160 acres the former improvements of Ivy Griffin in the southwest quarter of said survey, would it be a fair and equitable location of such 160 acres to run same in the form of a square constituting the southwest quarter of such 640-acre survey? Answer 'Yes' or 'No.'" Answer: "Yes."

The following special issues were given at the request of appellants, to wit:

(6) "Was any claim made by said James Griffin, Sr., to the title to the land farmed on the southwest quarter of said Wallis survey at any time while it was being farmed by him and his family, if it was so farmed? Answer 'Yes' or 'No.'" Answer: "No."

(7) "Did R. H. Calhoun go to Martin Williams while the said Williams was in possession of a part of the E. W. Wallis survey of land and have an understanding with the said Williams that Williams was not claiming said land and that said Williams would attend to said survey and look after the timber or trespassers thereon? Answer 'Yes' or 'No.'" Answer: "No."

It is agreed that appellants have the record title to the land in controversy, subject to appellees' claim of limitation. Appellees pleaded title to the land by 10 years' limitation under their father, Ivy Griffin, by virtue of possession taken, cultivation, and use of same.

The evidence shows that in 1865 James Griffin, Sr., with his family, settled on the Thouvenin survey of land, near the south line of the Wallis survey. The Thouvenin and Wallis surveys adjoin. Ivy Griffin, father of appellees, was a single man and lived with his father, James Griffin, Sr., as did another son, "Crippled Jim." Another son, George Griffin, also lived on the Thouvenin survey near his father. They all lived in the northwest corner of the Thouvenin. George Griffin cleared and fenced about 4 acres in the southwest corner of the Wallis survey near the north line of the Thouvenin and cultivated same for about two years, and then in 1868 sold his improvements on the Wallis survey to Ivy Griffin, who took possession of same, cleared and fenced several acres more, and continuously cultivated same until 1892. In 1892 he planted the land in oats, but in the spring of 1893 the fence burned, and the land was not cultivated any more after that time; but he continued to claim 160 acres where the field was located. Ivy Griffin and his father and brother Jim all worked the field together until about 1875, when the father became unable to work but little. The produce was carried to the home of James Griffin, Sr., the father, and divided; a part being placed in the barn of James Griffin, Sr., and part in the barn of Ivy Griffin, which he either sold or fed to his own stock. Ivy Griffin married in 1879, and moved to the place where his brother George had lived on the Thouvenin survey. Ivy Griffin's father, James Griffin, Sr., was old and feeble and could work but little, and his brother Jim was very badly crippled, and was known as "Crippled Jim." After Ivy Griffin married, his brother "Crippled Jim" lived with him until he (Jim) died. While Ivy was living with his father, he took the lead in looking after things and in making a living for the family.

Ivy Griffin was about 75 years old at the time of the trial herein. Ivy Griffin testified that there was no connection between the field on the Wallis survey and the place where he lived on the Thouvenin survey; that they were not under the same fence, but were some 500 or 600 yards apart, with a baygall between them; that he claimed 160 acres where his field on the Wallis survey was located from the time he bought his brother George's improvements in 1868 to the time he conveyed same to his sons, appellees herein, May 27, 1920; that no one else claimed the land—none of the Griffins

other than he (Ivy). Several witnesses corroborated the testimony of Ivy Griffin as to the location of the field on the Wallis survey, its cultivation and that he (Ivy Griffin) claimed 160 acres there. Several witnesses testified that they were well acquainted with the Griffin family; that they had often seen Ivy Griffin, together with his father and brother Jim, working in the field; and that they had always heard the place called "Old Man Jim Griffin's place"; that they never heard Ivy Griffin claim the place until shortly before this suit was filed. However, none of them testified that they ever heard James Griffin, Sr., lay any claim to the land, only heard it called "Old Man Jim Griffin's place."

[1] By various propositions, appellants raise what we deem to be the controlling question in the case, namely: Even if Ivy Griffin was in possession of a portion of the land in controversy, claiming 160 acres adversely to the owners of the record title for more than ten years, that because during some of that time James Griffin, Sr., the father of Ivy Griffin, worked in the fields and had the use and benefit of said fields, concurrently with Ivy Griffin, although James Griffin, Sr., did not at any time make any claim to the land, and was not in any wise in privity with the owners of the record title, still by his joining with Ivy Griffin in the cultivation and use of said field and sharing the proceeds thereof, said joint use and sharing of the produce prevented Ivy Griffin's possession from being exclusive, within the meaning of the law of limitation, so as to constitute adverse possession which would mature title by limitation in Ivy Griffin as against the holder of the record title.

[2] The jury found that Ivy Griffin, father and grantor of appellees, had had peaceable and adverse possession of the land in question, cultivating, using, and enjoying the same, for more than 10 years before the filing of the suit, and that James Griffin, Sr., father of Ivy although concurrently using the land and sharing its produce, did not at any time make any claim to the land. The sufficiency of the evidence to support the jury's finding is not contested, but it is urged that Ivy Griffin being a single man living with his father, and the father and other members of the father's family concurrently using the land and sharing its produce with Ivy Griffin, prevented Ivy Griffin's possession from being of that adverse and exclusive nature necessary for the acquisition of title by limitation. This contention is not sound. The fact that Ivy Griffin's father and brother worked the land with him and shared the produce, not claiming the land themselves, we think, warrants the conclusion that whatever possession and use they had of the land was in subordination to his claim, and not antagonistic thereto. It is now the well-settled rule in Texas that under the statute of limitation possession must be adverse and hostile as to the record owner, though not as to all the world. Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705; Beaumont Pasture Co. v. Polk (Tex. Civ. App.) 55 S. W. 614; Price v. Eardley, 34 Tex. Civ. App. 60, 77 S. W. 416; Glover v. Pfeuffer (Tex. Civ. App.) 163 S. W. 984; Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153. That the land claimed by appellees was jointly used by Ivy Griffin and his father and brother would not prevent Ivy Griffin from acquiring title by adverse possession, the land being claimed by him and not by the father or brother, the use of the land by the father and brother in such case being in subordination to that of Ivy Griffin. The concurrent use of the land by others would not militate against the exclusiveness, in a legal sense, of his possession, nor make it the less adverse in its character. Especially is this so where that use or concurrent enjoyment of it by others is in subordination to the claimant. Burnham et al. v. Hardy Oil Co. et al., 108 Tex. 569, 195 S. W. 1139; Esser v. Kneupper (Tex. Civ. App.) 205 S. W. 508; Parker v. Newberry, 83 Tex. 428, 18 S. W. 815; Watkins v. Cates, 24 Tex. Civ. App. 384, 59 S. W. 1123; Huling v. Moore (Tex. Civ. App.) 194 S. W. 193.

[3, 4] Appellants' theory that, because Ivy Griffin was a single man living with his father, a "constituent" member of his father's family, and as James Griffin, Sr., Ivy's father, and "Crippled Jim" Griffin, Ivy's brother, farmed the land concurrently with Ivy, and as James Griffin, Sr., did not claim the land, therefore his son Ivy, working with him as a member of his family, could have no such possession as would support limitation, is not sustained in law. Ivy Griffin testified on the trial that he would be 75 years old on July 8, 1921. That would have made him 22 years old at the time he bought the improvements from his brother George in 1868, at which time he began claiming the 160 acres, as he testified. So that, while he lived with and was the main support of his father and family during a portion of the time he was working and claiming the land in controversy, still he was of age and managing his own affairs. But, if he had been a minor, that would not have defeated his right to assert a claim to the land in terms of law. Houston Oil Co. v. Griffin (Tex. Civ. App.) 166 S. W. 902.

[5] Appellants insist that counsel for appellees committed reversible error in his argument to the jury, wherein he said, in effect, that adverse possession did not mean that Ivy Griffin should have exclusive possession, but that his possession, along with others, was sufficient, and called the jury's attention to the fact that the court, in its

charge, had not instructed that it was necessary for Ivy Griffin to have had exclusive possession, and that because the court did not so charge meant that it was not necessary to make out adverse possession for Ivy Griffin to have had exclusive possession, to which argument the defendants excepted, and asked the court to instruct the jury to disregard same, which the court refused to do. We do not think, under the facts and the court's charge, the argument was objectionable; but, if so, the error, if any, was harmless error. It could not have misled the jury.

[6] Appellants insist that the court erred in its definition of the term "adverse possession" in the charge to the jury. The court's definition of "adverse possession" is:

"'Adverse possession' is an actual and visible appropriation of the land commenced and continued under claim of right inconsistent with and hostile to the claim of another. By 'claim of right' is meant an intention to claim the land as his own."

Appellants contend that said definition is insufficient, "because the same under the facts of this case, is not sufficient in that the definition does not include the element of exclusiveness, distinctiveness, and notoriety of possession." We think the definition is sufficient. It is in the exact language of the statute, article 5681, and the facts do not call for an enlargement of the definition.

[7] Besides, if the court's definition had been too narrow, appellants cannot complain of same unless they had prepared and presented to the court a special charge covering the matter complained of, which they did not do. Railway v. Thompson, 222 S. W. 291; Adams & Washam v. Southern Traction Co. (Tex. Civ. App.) 188 S. W. 275; Railway Co. v. Hailey (Tex. Civ. App.) 156 S. W. 1121.

[8] Appellants complain that the court erred in its charge to the jury wherein it used. the expression "lands formerly cultivated and used by the said Ivy Griffin on the Wallis survey," because said expression assumes that· said Ivy Griffin did formerly cultivate and use said land, and was calculated to lead the jury to believe that the mere cultivation and use of said land by the said Ivy Griffin with others who cultivated and used same would be sufficient to make out the claim of limitation. No error is shown. The charge could not have operated prejudicially to appellants, for the undisputed evidence shows that Ivy Griffin did cultivate and use said land on said Wallis survey, concurrently, it is true, with his father and brother; but, as we have already held, the joint use of the land, they not making any claim to same, would not militate against the exclusiveness, in a legal sense, of his possession, nor make it the less adverse in character. It is within the prov-

ince of the court to assume in its charge the existence of an undisputed fact. Denham v. Trinity County Lumber Company, 73 Tex. 82; Railway v. Cornell, 84 Tex. 541, 19 S. W. 703; T. & P. Ry. Co. v. Crow (Tex Civ. App.) 40 S. W. 510; Reynolds v. Weinman (Tex. Civ. App.) 40 S. W. 560; Grain Co. v. City of Waco (Tex. Civ. App.) 137 S. W. 432.

We have carefully considered all the propositions presented by appellants, and do not believe that any of them present error, and therefore same are all overruled.

Finding no error in the record, the judgment is affirmed.