Ruth ARNOLD et al., Appellants,

v.

John JONES et al., Appellees.

No. 6932.

Court of Civil Appeals of Texas.

Texarkana.

June 20, 1957.

Rehearing Denied July 18, 1957.

Bath, Turner & Lloyd, Henderson, for appellant.

Norris Dennard, Tyler, Robert M. Allen, Henderson, for appellee.

CHADICK, Chief Justice.

This appeal is from a judgment in a trespass to try title suit concerning 160 acres of land in Rusk County instituted in the court below by the heirs of the late John R. Arnold and Dr. J. E. Watkins against John Jones and wife, Mary Jones, as defendants. Mike Blanton and numerous heirs of Charley Jones and wife, Hester Jones, were permitted to intervene. The defendants and interveners claimed title under the 10-year statute of limitation, Article 5510, V.A.T.C.S. On the verdict of the jury the court rendered a judgment awarding title and possession of 128 acres to John and Mary Jones and the intervening heirs of Charley and Hester Jones, and 32 acres to Mike Blanton. The judgment of the trial court is affirmed.

The 160-acre tract was deeded to James Blanton in 1870, the consideration being part cash and notes being given for the deferred remainder. In 1899, James and Manda Blanton deeded the land to George Grozdanick; then, in 1892, E. Frankfurt foreclosed the purchase money note by judgment. In the same year, M. B. Dreeben bought it at sheriff's sale for $80. It is not necessary to an understanding of this opinion to follow the title by mesne conveyances, it suffices to say that Yetta Dreeben in 1919 conveyed the land to Dr. J. E. Watkins. In 1921, Dr. Watkins conveyed John R. Arnold, a lawyer, an undivided half interest in the land.

The court submitted five special issues, defined "peaceful possession," "adverse possession," "hostile", "peaceful and adverse possession," "privity of estate," and "claim of right" in terms satisfactory to the parties and that appear to be correct and in appropriate language. The jury found that the heirs of Charley and Hester Jones and those in privity of estate with them matured a 10-year limitation title to 128 acres, and that Mike Blanton matured such title to 32 of the 160 acres. The jury also found that both use and occupancy of the land by Charley and Hester Jones, and those in privity of estate with them was not with the permission and consent

of appellants or persons in privity with them.

Appellants' nine points of error are divided into two groups for discussion. The first five points generally challenge the action of the trial court in not peremptorily ruling that as a matter of law the possession, claim and use of the land by appellees and their predecessors in title was insufficient to mature a title in them under the 10-year statute of limitation.

These contentions of appellant must be tested to determine if a fact issue respecting acquisition under the 10-year limitation statute exists. The test is, Will reasonable minds reach but one conclusion from the evidentiary facts adduced in the trial, or might variable inferences be drawn from such facts leading to different conclusions? Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Hammond v. Eplen, Tex.Civ.App., 216 S. W.2d 258, no writ history. If reasonable minds might differ, a jury issue is presented. For the purpose of this test the evidence is considered in the light most favorable to the jury's answers, and to sustain appellants' contentions, it must appear that there is no evidence having probative force upon which the jury could make its findings. Burt v. Lochausen, 151 Tex. 289, 249 S.W. 2d 194.

Rendered in its most favorable aspect, there is testimony in the record that Hester Blanton, a daughter of James Blanton, had a log hut or "pole pen" in which she and another woman slept and cooked on the tract of land as far back as 1907. In 1914, Hester, then married to Charley Jones, and her husband built a house on the land near a spring and both continued to live on, farm and graze the land until the time of their deaths. They erected fences on its boundaries and cross-fenced it to some extent. These fences or fragments of them were still in existence at the time of the trial as evidenced by pictures exhibited and oral testimony. A son, Buddy Jones and his wife moved in with Charley and Hester for about two years and then built a house on the land, but moved away in 1920. John Jones, another son of Hester and Charley, and his wife, Mary, moved on the place in 1918, and built a house which still stands and is occupied by them. About the same year, Tillmon Blanton, a son of Hester, and Tillmon's wife, Lula, also built a house on the land and continued to occupy the house and cultivate some of the land until Tillmon's death in 1951. Frank, still another son, built and occupied a house though the time and duration of such occupancy is not shown. Charley died in 1930, and Hester died in 1939. Other evidence admitted in the trial either expressly or by strong inference shows that John Jones and Tillmon Blanton used and occupied a portion of the 160 acres with the permission and in subordination to Charley and Hester Jones. In their testimony the children and in-laws of Charley and Hester referred to the place as the "homestead" and other witnesses of a disinterested character spoke of it as the "home place" of Charley and Hester. Mary, wife of John, testified that only Charley and Hester and their children lived on the place after 1918, and she did not know of any one else claiming it There is also evidence that while the appellees or their predecessors in title paid taxes as they accrued, a few of the years, the Arnold estate paid taxes as they accrued on one-half interest from the time of the deed to Mr. Arnold until time of trial. Dr. Watkins ceased paying taxes in 1927.

Appellants introduced a great deal of evidence which is not necessary to recite for the purposes at hand, but it is mentioned to explain their position. Without stating it in detail, they offered evidence that Dr. Watkins placed Charley and Hester on the land a few years before he acquired title to it, and considered and treated them as "his" Negroes, looking after their medical needs, and perhaps furnishing them a team and supplies as tenants. Many of these acts occurred prior to the time Dr. Watkins acquired title, and all within a few

years after Charley and Hester took up residence on the farm.

Mike Blanton, a son of James Blanton and a sister of Hester Jones, moved on the land in 1935, fenced off 32 acres in the southeast corner, erected a house and cultivated and grazed the 32 acres of land thereafter until his house burned in 1953, and he moved into town. Mike was never disturbed or his possession questioned by Hester Jones (Charley being dead), her children or the appellants, prior to suit, nor was rent demanded of him or paid. It appears that the defendants and interveners concede Mike's title to be perfected as against them.

The appellants earnestly urge that the evidence showing as it does that the children of Hester and Charley Jones moved upon, built houses, cultivated and used the 160 acres at a time beginning shortly after Charley and Hester's entry upon the land is evidence that Charley and Hester did not have that exclusive possession of the land contemplated by Article 5510 and that title in Charley and Hester therefore could not mature. They rely upon Vela v. Hester, Tex.Civ.App., 280 S.W.2d 369, and Humphreys v. Gribble, Tex.Civ.App., 227 S.W. 2d 235, in support of their contention. However, it is thought that the factual situation in this case is different from that disclosed in the cited cases. Here there is testimony that both of the children, John Jones and Tillmon Blanton, occupied the land in subordination to their parents, Charley and Hester Jones. Tillmon Blanton is dead but his surviving wife, Lula, testified:

"Well, when we moved there, why, we worked under Charley and Hester, and they told us we could go ahead and work the land and what we made we could have it, and we worked the land and sold the products, and we would help them through their crop."

Mr. Ezra Welch in the course of his testimony quoted John as follows: "He told me that they was heirs and they were going to stay there on it." The testimony does not disclose that any of the other children remained on the tract for an extended period of time. Simon Jones, who is also known as Buddy, was on the tract from 1918 until 1920. The record is silent as to the duration of occupancy, possession and use made of the premises by another child named Frank. From all the testimony the jury, staying within the orbit of its proper function, might draw an inference that any occupancy or use of the premises made by the children of Charley and Hester was with the consent of the latter two and not in opposition to them. More than sufficient time elapsed after the time that Simon Jones moved from the premises for a title to mature under the 10-year statute of limitation and before the death of either Hester or Charley.

These facts distinguish this case from the Vela v. Hester and Humphreys v. Gribble, supra. The facts here are more analogous to the cases of Anzaldua v. Richardson, Tex.Civ.App., 287 S.W.2d 299, wr. ref., n. r. e., and Petty v. Griffin, Tex. Civ.App., 241 S.W. 252, 254, wr. dism. In the latter case it is said:

"* * * The fact that Ivy Griffin's father and brother worked the land with him and shared the produce, not claiming the land themselves, we think, warrants the conclusion that whatever possession and use they had of the land was in subordination to his claim, and not antagonistic thereto. It is now the well-settled rule in Texas that under the statute of limitation possession must be adverse and hostile as to the record owner, though not as to all the world. Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705; Beaumont Pasture Co. v. Polk, Tex.Civ.App., 55 S.W. 614; Price v. Eardley, 34 Tex.Civ.App. 60, 77 S. W. 416; Glover v. Pfeuffer, Tex.Civ. App., 163 S.W. 984; Smith v. Jones,

103 Tex. 632, 132 S.W. 469, 31 L.R.A., N.S., 153. That the land claimed by appellees was jointly used by Ivy Griffin and his father and brother would not prevent Ivy Griffin from acquiring title by adverse possession, the land being claimed by him and not by the father or brother, the use of the land by the father and brother in such case being in subordination to that of Ivy Griffin. The concurrent use of the land by others would not militate against the exclusiveness, in a legal sense, of his possession, nor make it the less adverse in its character. Especially is this so where that use or concurrent enjoyment of it by others is in subordination to the claimant. Burnham v. Hardy Oil Co., 108 Tex. 569, 195 S.W. 1139; Esser v. Kneupper, Tex.Civ.App., 205 S.W. 508; Parker v. Newberry, 83 Tex. 428, 18 S. W. 815; Watkins v. Cates, 24 Tex.Civ. App. 384, 59 S.W. 1123; Huling v. Moore, Tex.Civ.App., 194 S.W. 193."

The jury had evidence before it of a probative value which would support its finding that the use and occupancy of the land by the children of Charley and Hester Jones was in subordination to their parents and not adversely to them.

With like vigor it is urged that the evidence failed to show the claim of Charley and Hester Jones to the land was hostile initially to Dr. Watkins and Mr. Arnold and thereafter to those in privity with them, the appellants here. Reliance is had upon Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781; Allen v. Sharp, Tex.Civ. App., 233 S.W.2d 485; Stewart v. Luhning, 134 Tex. 23, 131 S.W.2d 824, and others to sustain this position.

■ The evidence that Dr. Watkins placed Hester and Charley in possession about 1914, and perhaps in the years shortly thereafter supplied them as tenants is denied and an entirely different version of their entry on the land is offered as well as a denial that Dr. Watkins furnished a team

or any supplies. Mr. Arnold died in 1932, and Dr. Watkins in 1949. There is no evidence that either collected rent or exercised any control or dominion over Charley or his children, except as previously noted, shortly after Charley took possession of the place. As to Dr. Watkins, he had paid no taxes on the place for some 22 years before his death and exercised no control over the place or demanded or collected rent or did anything to indicate a proprietary interest in it, except as just mentioned, a few years shortly after Charley went into possession. Mr. Arnold, and after his death his estate, has paid taxes regularly each year, but there is no other evidence that Mr. Arnold and those in privity with him claimed or exercised any dominion over the land, or made any effort to collect rent, manage it, or control or direct the tenants on it. The test of a hostile claim is whether the use, occupancy and possession of land is of such nature and character as to reasonably notify the true owner of the land that a hostile claim is being asserted to it. W. T. Carter & Brother v. Richardson, Tex.Civ.App., 225 S.W. 816, affirmed Tex.Com.App., 236 S.W. 978; also 2 T.J. Sec. 54, p. 105, note 2.

In Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 472, 31 L.R.A.,N.S., 153, it is said:

"It is therefore true that a 'claim,' to satisfy the statute, may be only such as is involved in a mere maintenance of possession of, and the exercise of dominion over, the land, provided there be present the attitude of hostility and exclusiveness towards the true owner; but it is still true that the facts must give rise to the inference of a claim or an attitude of that character where there is no color or claim of title."

In the case of Thompson v. Richardson, 221 S.W. 952, 953, the Supreme Court, speaking through the Commission of Appeals, said:

"Under the ten years' statute, no deed is necessary; no muniment of title is required; and the possession in compli-

ance with the terms of the statute, in the absence of evidence to the contrary, carries with it the presumption that it is held under a claim to the land. However, where the evidence raises the issue as to the assertion of a claim of which the possession is notice, it then becomes a jury question, and their finding is conclusive."

■ Occupancy, possession, use, cultivation, grazing, erecting houses, and fencing the 160 acres by Charley and Hester and those in privity with them from the year 1914 until 1938 when Mike Blanton made entry and took possession of 32 acres and thereafter of the remainder without direction, control, opposition or hindrance of either Dr. Watkins, Mr. Arnold or those in privity with them raises the inference that such possession and use by Charley and Hester and their successors in title was hostile, and as said in Thompson v. Richardson, supra, the jury's finding is conclusive.

■ Appellants further urge that there was no notoriety of the claim to the premises made by Charley and Hester Jones. Evidence of notoriety of a party's claim is admissible upon the issue, but no case is cited and we know of no authority holding that the absence of general knowledge in the community as to the character of an adverse claimant's title is sufficient in itself to defeat the adverse claimant. In Griswold v. Comer, Tex.Civ.App., 161 S.W. 423, affirmed Tex.Com.App., 209 S.W. 139, it is said that the requirement is satisfied where the facts show that diligence on the part of the owner would have enabled him to learn of the claim and its active assertion. Also see Brownson v. Scanlan, 59 Tex. 222, 226. It has also been held that no particular act or series of acts need be established. Mandelbaum v. Looney Mercantile Co., Tex. Civ.App., 293 S.W. 203, no writ history. The facts show that the use and occupancy was open and of roughly 40 years duration and was known to all persons in the general community. Charley and Hester Jones,

besides the use previously noted, while residing on the premises reared one boy and three girls from childhood in addition to those already named, and the place was referred to by the children as their homestead or home-place and was so called by white citizens of the community.

The possession, use and occupancy of 32 acres claimed by Mike Blanton is subject generally to the conclusions already expressed. In addition, it might be pointed out, however, that there is no suggestion in the record that Mike Blanton entered on the land under authority of either Dr. Watkins or Mr. Arnold or their privies, and that his holding, possession and use was adverse to both the Watkins, Arnold and Jones claims of title and was fully maintained for over 10 years. The evidence is that he built a house and lived in it, then fenced, cultivated, and grazed the 32 acres from 1938 until 1953.

■ From what has been said, it is concluded that a jury issue was made and same was properly submitted and appellants' Points 1 through 5 are respectfully overruled.

■ Appellants' second group of points assert that the jury's answers to Special Issues 1 and 2 (issues on adverse possession) are without support in the evidence and are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

Reference to the discussion of previous points eliminates a necessity for a recitation of the facts further with respect to appellants' Points 6 through 9, and they are respectfully overruled. There is credible evidence of probative value sufficient to support the jury's finding and considering the evidence as a whole, the same cannot be said to overwhelmingly preponderate against the verdict to such extent as to say the jury's answers to Special Issues 1 and 2 are clearly wrong and unjust.

The judgment of the trial court is affirmed.